## Johnston and Lyon *against* Fessler.

To render a proposed contract binding, it must be acceded to by both parties at the time. A mere voluntary compliance with its terms by one, who had not previously agreed to it, does not render the other liable to it.

On an appeal from a justice, the court are bound to put it into form, and to allow the introduction on record of the names of omitted copartners as defendants.

ERROR to the common pleas of *Perry* county.

This suit originated before a justice of the peace, in the name of Jacob Fessler against John Johnston & Co., and the defendants appealed from the decision of the justice. The plaintiff's declaration set out an indebtedness of Duncan & Mahon to him, and that Johnston & Co., in consideration that the said plaintiff would accept them to be his debtors, and in further consideration of delay given by him, the said plaintiff, unto them the said Johnston & Co., and in the stead and place of the said Duncan & Mahon, would accept and receive them, the said Johnston & Co., and discharge the said Duncan & Mahon from the payment of the same, assumed and promised to pay to the said plaintiff, &c.

The plaintiff asked the court to permit him to amend the style of the suit, so as to insert the name of Jacob B. Lyon, who was one of the firm of John Johnston & Co., and to swear the jury as to both defendants. The court permitted the amendment to be made, and the defendants excepted.

The plaintiff, after establishing his account against Duncan & Mahon, called a witness, who testified as follows. "I was present at a conversation between Jacob Fessler and Jacob B. Lyon. Fessler asked Mr Lyon if they paid debts for Duncan & Mahon. He said they did pay debts for Duncan & Mahon. He asked Fessler what his account was; told him to bring it over. Fessler said he had made out his account and handed it over to Mr Owen, the clerk of Johnston & Lyon. He asked him how much it was. Fessler said between 80 and 90 dollars. Lyon said they had paid out so much money that he could not just give him the money, but he would

[Johnston & Lyon v. Fessler.]

give him iron. Fessler said he would see if he could sell the iron; if so, he would take it. Lyon said if he would not take iron, he would pay him in money by the spring following. Johnston & Lyon were doing business at that time at the forge. Nothing was said how they were to pay the debts of Duncan & Mahon."

In answer to certain points put for instruction to the jury by the defendants, the court answered:

"Having laid the consideration as a fact, the plaintiff must prove it, and the whole of it; without proof of its truth he cannot recover. It seems from the evidence that Duncan & Mahon were carrying on the operations of Duncannon forge, as partners; that Johnson & Lyon in some way succeeded them, and carried on the works; in what particular way they became successors is not stated. Duncan & Mahon were indebted, among others, to plaintiff. He came to Lyon, one of the partners, and asked him if they paid debts for Duncan & Mahon. He said they did. This indicated, to my mind, that there was some arrangement by which defendants paid these debts; but what arrangement is not indicated. Do you pay Duncan & Mahon's debts? Yes. This would seem, to my mind, to indicate that they had assumed such debts by some arrangement between the parties. If it is indicated by fair inference from the facts stated, that defendants admitted they were liable to pay this debt for Duncan & Mahon, and they assumed to pay it to plaintiff, and he rested on that promise for payment, if he did not take the iron, but actually waited till spring next, and then brought this suit, having rested alone on this promise for his security, and discharged Duncan & Mahon, such *would* constitute a valuable consideration. If there was an arrangement of Johnston & Lyon with Duncan & Mahon to pay this debt, then the promise of Lyon, one of the partners, to the plaintiff, would be binding on both partners; binding on the firm.

"If in the arrangement between Duncan & Mahon with Johnston & Lyon, there was an arrangement that Johnston & Lyon were to pay this debt; if the consideration of arrangement was executed, and they assumed to pay the debt to Fessler; then if this was known to Fessler, and he took them for it, they would be principal debtors; and Fessler agreeing to take iron at a future day from them, or cash on a future day, it would, in law, discharge Duncan & Mahon. It would substitute the present defendants in their stead as laid in the declaration."

*Alexander*, for plaintiff in error,
*Watts*, for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—The question on which the merits of this case must turn, arises on the third bill of exceptions, and the answer of the court as to the effect of the testimony. The plaintiff declares that, in consideration of delay, and the further consideration that he would accept

vii.—e 2

[Johnston & Lyon v. Fessler.]

&c. the defendants as his debtors, and would discharge Duncan & Mahon, they assumed to pay the debt. If a creditor, at the request of a third person, forbear to sue his debtor for a certain time, it is a sufficient consideration to support a promise by such persons to pay the debt. But a mere forbearance, without request or agreement, will not render the person liable to an action. Here the alleged consideration of the contract is, that he would accept the defendants as the debtors, and discharge Duncan & Mahon from the payment of the debt. The consideration must be proved as laid in the declaration; and the doubt is whether the plaintiff proved a contract by which the defendants were bound to pay the debt of Duncan & Mahon. The promise of Lyon, who represented the firm, was in the alternative. He said they were not able to give him the money then, but that they would give him iron, if he would take it; or they would pay him in money by the spring following. Here the defendants offered to do one of two things, and if Fessler had closed with either, the contract would have been concluded: but in order to render a contract certain and complete, it is indispensable that there should be the assent of both the contracting parties; or both are at liberty to recede from it. Fessler did not accede to the offer at the time, as is apparent from the testimony; on the contrary, he said, in answer to the defendant's proposition, that he would see if he could sell the iron; and if so, he would take it. The other alternative would not seem ever to have been a matter of deliberation with him. For aught that appears, no further communication took place between them; and we are now left to conjecture whether Fessler agreed to accept of his debt in iron, or preferred waiting until spring, and receiving it in cash. The mere fact that he delayed commencing his suit until spring does not remove the difficulty, as his assent to the agreement was a prerequisite to the consummation of the contract. At the time of entering into the contract, the engagement was all on one side. The other party not being bound, it was *nudum pactum*, according to the principles decided in —— v. Oxley, 3 *T. R.* 653. We cannot see a shadow of proof from which the jury could draw the inference that Fessler agreed to accept Johnston & Co. as his debtors, instead of Duncan & Mahon. It is to be regretted that a contract to pay the debt of another may rest in parol; and such contracts should not be enforced on slight grounds.

This was a suit before the justice, substantially against John Johnston and Jacob B. Lyon, trading under the firm of John Johnston & Co. It was so understood by all the parties. Both the members of the firm had notice of the suit, and the appeal was entered for both by their common agent and manager. The suit is not, it is true, set out before the justice with technical precision, nor is this nicety required; but, on the appeal, it is the duty of the court to put it into form, and of course there is no error in ordering the jury to be sworn according to the parties, as they are correctly stated on the record. If we were to hold justices of the peace to strict technical rules, it

would greatly impair the usefulness of this tribunal; and for this reason we have been very liberal in the allowance of amendments, in all cases where the parties and the cause of action are the same as before the justice.

There is nothing in the objection to the evidence contained in the second bill.

Judgment reversed, and a *venire de novo* awarded.