## Albert Crane v. Peter Partland.

Where a contract is executed in duplicate, each of the duplicates is to be treated as an original.

Where parties intend to make a contract in duplicate, so that each shall have in his possession the evidence of his rights and of the obligations of the other, the contract is not complete and duly executed until duplicates at least *substantially* alike are executed and delivered. *Semble.*

Where one without written authority from the owner drew contracts for the sale of a parcel of land, both of which were signed by the purchaser, and one of them delivered to him, but they differed in the following particulars: that in the one delivered to the purchaser both the agent and the owner were named as parties of the first part, but it was signed by the agent alone in his own name; and in the one retained by the agent the owner alone was named as party of the first part, and his name was signed thereto by the agent: it was *held* that the contract was not complete so that the purchaser could be sued on the one retained by the agent, for the purchase money.

The acceptance by the owner of the instrument retained by the agent, and the signing his own name thereto, without the assent or knowledge of the purchaser, will not make it binding upon the latter. To make an act amount to a ratification in such a case, the two instruments must each be capable of ratification by the same act.

*Heard October 31st and November 1st,* 1861. *Decided January 20th.*

On case made, from Wayne Circuit.

The plaintiff declared, for that defendant, on July 2, 1855, at Detroit, "by a certain agreement or contract, then and there made, between the said plaintiff and defendant, among other things agreed, for himself, his heirs, executors and administrators, and assigns — for and in consideration of the said plaintiff (among other things) agreeing, at the special instance and request of the said defendant, for himself, his heirs, executors and administrators, to sell to the said defendant all that piece or parcel of land, situated in Detroit, Michigan, and known and described as lot one in block twenty-three, Crane & Wesson's section of the Forsyth farm, north of the Grand River road, and upon full payment to him, the said plaintiff, of the sum of five hundred and ninety-five dollars, with interest, as therein set forth, and taxes, to execute to said defendant a good and sufficient warrantee deed of said lot, — to pay said plaintiff the sum of five hundred and ninety-five dollars,

in the manner following, to wit: ten dollars on the delivery of said contract and the balance in nineteen equal quarterly payments. The first quarterly payment to be made on the first day of October, A. D. 1855, with lawful interest from the date of said contract to be paid quarterly on the whole sum remaining unpaid in each year, at seven per cent., and to pay all taxes and assessments imposed on said premises from and after the first day of January, 1855, ordinary, extraordinary, and for revenue purposes.

"And the said plaintiff avers, that at the special instance and request of said defendant, he, the said plaintiff, then and there undertook and faithfully promised said defendant to perform and fulfil the said agreement in all things on the said plaintiff's part to be performed and fulfilled; and he, the said defendant, undertook and faithfully promised the said plaintiff then and there, to perform and fulfill the said agreement in all things on the said defendant's part and behalf to be performed and fulfilled. And although the said plaintiff hath always from the time of the making of the said agreement, performed and fulfilled, and still is ready to perform and fulfill all things on his part and behalf in the said agreement to be performed and fulfilled, and did afterwards, to wit, on the 2d day of July, A. D. 1855, at Detroit, county aforesaid, sign and deliver said contract in duplicate to said defendants; yet the said plaintiff in fact saith that said defendants," &c.

The written statement of facts agreed upon is as follows:

"The lot agreed to be sold by the contract hereto attached and marked D, and which is the contract plaintiff claims upon, was owned by plaintiff at the time of the execution of said contract. That plaintiff was absent when defendant signed it, and plaintiff signed it a month afterwards. The signature "Albert Crane by Wm. B. Wesson" was placed to the contract declared on and marked D, at the time defendant signed it, by Wm. B. Wesson, Crane's agent. That Wesson had no written

authority so to sign. On Crane's return he erased the above, and signed his own name unknown to defendant. At the time of signing by Partland of the instrument marked D, it being the instrument declared on and offered by plaintiff, the instrument marked E was executed and delivered to defendant as a duplicate. The amount of principal and interest due on the instrument, offered by plaintiff in evidence, and marked D, is this day $785.69. The lot mentioned in instrument D is of equal value now as at date of such instrument."

The contracts referred to as "D" and "E" were in the ordinary form of contracts for the sale of lands. Printed forms had been used in drawing them, in which the names of Albert Crane and William B. Wesson were printed in, as parties of the first part. In "D," Wesson's name was struck out, in "E," it was not. Both were signed by defendant. Crane's name did not appear in the signing of "E," but it was subscribed by Wesson in his own name.

The Circuit Judge found as follows:

1. Partland, the defendant, being in this action "the party sought to be charged," and he having signed the contract "D" on which plaintiff seeks to recover, and nothing more remaining to be done by him, he is legally liable.

2. To sustain this action plaintiff need not prove a tender of the deed to the defendant, and demand for payment before he commenced his suit.

3. The duplicate marked "E" is not an essential part of the instrument declared on by plaintiff and marked "D:" the defendants's liability is full and complete by the contract "D," which contains a full and complete assumpsit, and does not depend upon, nor is it limited by the duplicate "E."

4. Though Wesson had no proper authority to sign the contract "D" for Crane, the plaintiff, yet, under the point number one found above, such signing does not affect defendant's liability in this action.

CRANE *v.* PARTLAND.

5. Plaintiff's measure of damages in this action is the amount due under the instrument declared on, with interest on the whole sum unpaid up to the date of the judgment, and plaintiff is not bound to prove other damages to enable him to recover.

*H. M. & W. E. Cheever*, for plaintiff, argued, that it was sufficient to bind defendant that the contract was signed by him. The broad question of the mutuality of a contract does not arise here:—16 *Wend.* 460; 3 *Greenl.* 409; 13 *Mass.* 87; 2 *Caines*, 117; 14 *Johns.* 485; 2 *Nott and McCord*, 207; 2 *Bing. N. C.* 735; 2 *B. & P.* 238; 6 *East*, 307; 3 *Scott S. C*, 238; *Chit. on Cont.* 70. The Statute, *Comp. L.* § 3183, has not changed the rule: 14 *Johns.* 485. But at all events the payment by defendant of part of the purchase price, constitutes a part performance of the agreement so as to take the case out of the Statute of Frauds, and entitle the vendor to a performance by defendant.

*C. E. Eddie* and *S. D. Miller*, for defendant, claimed that in such a contract as this, the duplicate instrument is an essential part; if it varies from the original, or rather if there is no true duplicate, the defendant is bound only by the instrument in his hands; and the character of the agreement is to be determined by that: and where no true duplicate exists, no contract is consummated. They further argued that, inasmuch as Wesson had no written authority from Crane to sign his name and attach his seal, the subsequent signing by Crane without the knowledge of defendant could not make good the contract; there being no mutuality in the inception of the contract.

CHRISTIANCY J.:

Do the facts which appear in the case establish the contract declared upon? I think they do not constitute a contract of any kind between the plaintiff and the defend-

ant, upon which the plaintiff can maintain an action at law. It is clear, I think, from the case stated, that there was an attempt to make a contract in two parts or duplicates, each of which should be signed and sealed, and of equal validity with the other, that each party might have one in his possession which should constitute the evidence of his rights, and upon which he might enforce the obligations of the other. This, I think, is clearly enough admitted on the face of the declaration, by declaring that the plaintiff "signed and delivered said contract in duplicate to the defendant." Besides, the subject matter and the printed forms used, seemed to require this; as rights were to be given to and obligations imposed upon each of the parties; the one undertaking to sell and convey on certain terms and conditions, and the other to pay in certain instalments, and to pay taxes, &c.

And it is just as unreasonable to suppose the purchaser would be willing to leave the whole evidence of his rights in the hands of the vendor, as that the latter should be willing to leave the evidence of his rights in the hands of the former.

Duplicate contracts in such case, must therefore, I think, each be treated as originals by whatever names the parties may have chosen to call them; and though the one delivered to Partland is declared upon its face to be a "*duplicate copy,*" the word *copy* has no appropriate force in such a connection. If a mere copy, not authenticated by the genuine signatures of the persons executing the other, it could not be a duplicate. That this is the true construction is clear from the fact that in the next line the other duplicate is described as the "*original copy.*"

Did the parties or persons who executed these papers intend to make any contract otherwise than in duplicate? Are we authorized to say that either would have been willing to enter into the contract evidenced by either of these papers, without having in his own possession the

evidence of his rights, and of the obligations of the other?

If these questions are answered in the negative, as I think it is clear from the whole case they must be, can we, without violating the intentions and the rights of the parties, hold the contract to have been complete and duly executed until duplicates *at least substantially* alike have been executed and delivered? I am strongly inclined to think we could not, even though Crane had been present executing for himself, and there were no question of agency in the case.

But, as Wesson had no authority to execute for Crane, and the subsequent ratification of the latter was necessary to give validity to the contract, no act of Crane's should, I think, be recognized as a ratification of the contract, so as to bind Partland, which would not operate as a ratification of the duplicate delivered to Partland as the evidence of his rights: and to make a ratification of the other operate as a ratification of this, both instruments should be such as to be capable of ratification in the same way and by the same act.

But here, the instruments executed as duplicates are so different that one only was susceptible of ratification. That which came into Crane's hands describes the vendor as Albert Crane, and is signed "Albert Crane by William B. Wesson." That delivered to Partland mentions two as vendors, "Albert Crane and William B. Wesson," and is signed and sealed by William B. Wesson alone, Crane's name not appearing in the signature. This was incapable of ratification by Crane, as it did not purport to be executed by Wesson or any other person in his behalf. He might have signed it, it is true, and thereby bound himself jointly with Wesson, but this would not be ratifying the act of Wesson as his agent.

The view which I have taken of the case renders it unnecessary to consider the questions raised upon the Statute of Frauds, or the necessity of tendering a deed before action, or the rule of damages in such contracts.

CRANE v. PARTLAND.

It is possible that Crane, by tendering to Partland a proper duplicate duly executed by him, and especially by showing, what does not appear here, that Partland went into possession or received or claimed any benefit under the contract, might sustain a bill in equity, on the ground of mistake, to reform the contract; but upon this I give no opinion, as the question is not involved in the present case.

MARTIN CH. J. and CAMPBELL J. concurred.

MANNING J.:

In drawing up the duplicates, or what were intended. to be such, blank forms it would seem were used, that had been got up by Crane & Wesson for the sale of lands by them, in which their names were printed, and they were described as parties of the first part. In filling up the blanks, the name of Wesson was struck out of the one in plaintiff's possession, but was left in the one delivered to defendant. They also differ, in that the one plaintiff has was executed "Albert Crane by Wm. B. Wesson," while the one in possession of defendant was signed "William B. Wesson," making no mention of Crane. It is evident to my mind from the case made, that each was intended to be a copy of the other, and that through some inadvertency Wesson's name was not stricken out of the one delivered to defendant, and it was signed by Wesson in his own name instead of Crane's. Such being the facts, as I understand them, does the mistake vitiate the contract? I think not. Duplicates are not separate parts of a contract, each as, essential to the existence of the contract as the halves are to a whole. Each is complete in itself: each. is the contract between the parties: each is an original, and not a part or copy of the other. And when from accident or mistake they happen to differ from each other, the only question is which is genuine and which is spurious. When that is ascertained, I know no reason why an action may-

not be sustained on the one that truly states the contract between the parties. This would seem to follow if duplicates are originals: if each is a whole in itself, and not a part of a whole. When it can not be shown which is genuine and which spurious, the action must fail; not because there is no contract, but for the want of evidence to prove it.

An agreement for duplicates in reducing the contract to writing, that each party may have the contract in his possession — which would seem to be the principal if not only object of duplicates, unless it may also have in view the greater security of the contract against loss or accident— it does not appear to me is a part of the contract itself, but a subsequent collateral agreement, which, if not carried out by reason of a mistake in drawing one of the duplicates, does not annul the contract.

On the other points made on the argument I am also with the plaintiff. It is not, however, necessary that I should give my reasons, as a majority of my brethren are in favor of reversing the judgment.

*Judgment reversed.*