[No. 3,346.]

E. F. NORTHAM AND E. P. WHITMORE, EXECUTORS OF THE ESTATE OF H. M. WHITMORE, DECEASED, *v.* ELIZABETH ANN GORDON, JOHN T. DOYLE, AND JOHN H. REDINGTON, EXECUTORS OF THE ESTATE OF GEORGE GORDON, DECEASED.

CONDITIONAL CONTRACT.—An offer by a party to perform certain services for another party, provided he complies with certain conditions named in the offer, does not create a contract unless the conditions are complied with by the other party ; and if the party making the offer performs the services, relying alone on the promise of the other party to comply with the conditions, an action will not lie on the proposed contract to recover for the services performed.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion.

*J. W. Winans,* for Appellant.

The agreement in this case cannot be considered as a mere proposition, and not a contract. If it be construed as an instance where the promise of one party is the consideration of the promise of the other, and such it certainly is, it complies with the rule which renders such an instrument binding. That rule is that the promises must be concurrent and obligatory upon both parties at the same time. (*Tucker* v. *Woods,* 12 Johns. 190.) Gordon was certainly bound on his part by subscribing to the agreement, provided Northam and Whitmore were also bound by the manner in which they subscribed the same, or were bound in any other way. And they were clearly bound by their acceptance of it, if not otherwise bounden. If a party accept of an agreement from which he is to derive a benefit when he shall have performed an act, such acceptance is equivalent to an affirmative agreement on his part to perform the act. (*Roberts* v.

*Marston,* 20 Maine, 275; *Hubbard* v. *Coolidge,* 1 Metc. 84.)
"It has, I think, been held that an instrument beginning,
'it is agreed' and signed by one of the parties only, was not
binding upon the other party until accepted by him." (Per
Holroyd, J., in *Payne* v. *Ives,* 3 Dowl. and Ry. 664.)   "We
do not deem it necessary that the assent of both parties
should appear upon the face of the instrument, any further
than that the writing should import a contract between the
parties, and be signed by the party to be charged therewith.
It is in proof that the complainant agreed to take the land.
This, we think, upon well settled principles, may be proved
*aliunde* the instrument. The contract was therefore mutual."
(*Ives* v. *Hazard,* 4 Rhode Island, 27; *Kieth* v. *Kerr,* 17 Ind.
284.)   But a signature by the party to be charged—that is,
the defendant alone—is sufficient to sustain the action.   (2
Rev. St. N. Y. 136, Sec. 2; Hittell's Digest, Laws of Cali-
fornia, Art. 3156; *Fenley* v. *Stuart,* 3 Sandf. Sup. C. 105, and
cases there cited; *Harris* v. *Aspinwall,* 3 Sandf. Sup. C.)

These authorities apply to section three of the Statute of
Frauds, concerning contracts for the sale of goods, but they
are equally applicable to section two, concerning every
agreement which, by its terms, is not to be performed within
one year.   Our own Statute of Frauds is the same as that
of New York.

Even if the agreement were to be construed as a mere
proposition from Gordon, and not originally binding on him
for want of mutuality, yet the performance thereof by
Northam and Whitmore rendered it binding, and plaintiffs
can recover the value of the services as fixed by the agree-
ment.   (*Tain* v. *Gold,* 5 Pick. 384; *Barnes* v. *Perrine,* 9 Bab.
210; *McAuley* v. *Billinger,* 20 John. 89.)

*J. P. Hoge,* for Respondent.

The instrument declared on is not a contract, and does
not purport to be a contract.   At best, it is rather a contract

to enter into a contract at a future time, upon certain terms and conditions specified; and upon the very face of the paper, if that contract is not entered into, and those terms and conditions complied with, neither party is bound. By the express averment of the complaint that contract was never entered into, nor the terms and conditions complied with. No action can be sustained upon this instrument as a contract. It binds no one, and confers no right of action. The paper simply contains a proposition from certain gentlemen to all persons interested with them in property subject to the Limantour claim, so called, to unite in a plan or basis of operations, to be afterwards carried into a contract, with certain terms and conditions, for the purpose of resisting that claim ; and the sole object of the proposition was to ascertain if a sufficient number of the parties interested in the property involved would unite in the proposed plan, and would agree to enter into contracts for that purpose, to justify the undertaking. This is apparent upon the face of the paper.

If this paper was intended as a contract, then it is void for want of mutuality, and for want of consideration.

The plaintiffs, as between themselves and Gordon, the defendants' testator, were bound to do nothing. On the part of the plaintiffs, the document in question presents a naked proposition to defend Gordon's title to the extent of the amount he pays, to such lands as he may list with them as an Executive Committee, provided he would do certain things, to wit: present a description of the property he desired to have defended, and pay one per cent on its assessed value, and enter into a contract to pay the remaining percentages upon the terms and conditions in the document specified. Unless these things were done, upon the very face of the paper, the plaintiffs say they will not be bound to do anything, and will not exert themselves, or impart any information, or defend any title to any lands of

Gordon. It is solely for the protection of the property of those who comply with these conditions that the claim is to be litigated. (*Jenkins* v. *President, Directors, and Co. of Union Turnpike Co.*, 1 Caine's Cases in Error, 86; id., 1 Caine's Reports, 381; *Wood* v. *Coosa and Chattooga R. R. Co.*, 32 Georgia, 273; *Hibernia Turnpike Co.* v. *Henderson*, 8 S. & Rawle, 220, 226; *Waggeman* v. *Bracken*, 52 Ill. 470; *Tucker* v. *Woods*, 12 John. 189; *Governor, etc.*, v. *Petch*, 28 E. L. & E. 470; *Honeyman* v. *Marryatt*, 6 House of Lords Cases, 112; id., at the Rolls, 21 Beavan, 14; *Troy and Boston R. R. Co.* v. *Tibbits*, 18 Barb. 298, 300, 306; *Utica and Schenectady R. R. Co.* v. *Brinkerhoff*, 21 Wendell, 139, 140; Chitty on Contracts, 11, 15; *Cope* v. *Albinson*, 16 E. L. & E. 470.)

By the Court, CROCKETT, J.:

This is an action to recover from the executors of the estate of George Gordon, deceased, a sum of money alleged to be due from the estate to Northam and Whitmore, for services rendered by them in successfully resisting the claim of one Limantour to certain lands of Gordon, which were included within the claim. It appears that certain persons, including Gordon, whose lands were affected by the Limantour claim, agreed upon a plan of organization for the purpose of resisting the confirmation of the claim. The plan was reduced to writing, and subscribed by a number of the property owners, of whom Gordon was one. It was agreed to appoint a General Committee, and also an Executive Committee of two, and that the latter Committee should devote its entire attention to the business—should employ counsel, collect evidence, and attend to the defense through all the Courts. It was further agreed that the Executive Committee should "act as contractors with the respective parties

in interést to defend to the full extent, if necessary, of the amounts collected and received from them respectively such lands as may be listed with said Executive Committee" against the claim of Limantour, upon condition that "the description of their property shall be presented to the Executive Committee, and a payment shall then be made of one per cent on the assessed value thereof, as per County Assessor's roll for 1855–56 to the Treasurer, through the Executive Committee, to be entirely applied, on the orders of the Executive Committee, to the cash expenses and disbursements contingent to the business of subscriptions and defense.   \*   \*   \*   The owners or their duly authorized agents of record, shall then execute a stipulation to pay to the Executive Committee, on said valuation of their said property, one and one half per cent" on the rejection of the claim by the Land Commission; one per cent on the rejection of the claim by the District or Circuit Court, and one and a half per cent on its rejection by the Supreme Court. It was further provided that "should Limantour avoid the issue by releasing the said property, then the whole of the percentages not previously paid shall become due and payable, as if the said claim had been defeated in each instance. \*   \*   \*   It is to be distinctly understood that the claim is litigated solely for the protection of the properties registered in their book, and subscribed upon. The Executive Committee will not exert itself for the benefit of those who do not assist in defraying the cost." Northam and Whitmore were appointed the Executive Committee, and thereupon Gordon and four other persons subscribed a memorandum at the foot of the instrument in these words: "The undersigned, parties in interest, will subscribe to the foregoing plan, and will so contribute on the property represented by them within said claim." Opposite Gordon's signature the property represented by him is stated to be of "about the assessed value," of forty thousand dollars. The complaint,.

after stating the substance of these instruments, avers that Northam and Whitmore entered upon the performance of their duties as the Executive Committee, and expended large sums in resisting the Limantour claim, which was ultimately rejected by a final decree of the District Court of the United States.   But before the claim was finally rejected they procured Limantour to release his claim to Gordon's land, by a deed duly executed, which they tendered to Gordon, and requested payment of the amount agreed to be paid.   They further aver that the assessed value of Gordon's property, within the Limantour claim, was eighty thousand nine hundred and fifty dollars; and that, though often requested to do so, he neglected to present a description of his said property, and to execute the stipulation, or to pay either of the percentages provided for in the contract.   At the trial, the plaintiff's counsel, in his opening statement, offered to prove all the averments of the complaint not admitted by the answer, and also that Gordon, in his lifetime, recognized the instrument here sued on, "as an agreement *in presenti*," and when asked by Northam and Whitmore to give the description and stipulation therein called for, put them off, saying he did not clearly know the exact assessed value of the property, but would obtain it and furnish a description; that he thought it amounted to about eighty thousand dollars. Some other facts were offered to be proved, which we deem it unnecessary to notice.   The defendants moved for a nonsuit on the plaintiff's opening statement, on the ground that if all the facts proposed to be proved were true, they would not constitute a cause of action.   The motion having been granted and a final judgment entered for the defendants, the plaintiffs appeal from the judgment and from the order denying their motion for a new trial.

We think the nonsuit was properly granted.   One of the conditions of the plan of organization was that the Limantour claim was to be " litigated solely for the protection of the

properties registered in their books and subscribed upon. The Executive Committee will not exert itself for the benefit of those who do not assist in defraying the cost." The offer of the Executive Committee was to render their services in behalf only of property registered in their books and subscribed upon. Until the property was registered and the subscription made in the manner provided by the plan of organization, the offer was not accepted. Until this was done the committee was under no obligation and did not undertake to render any service for the protection of the property; consequently there was no contract between the parties, for the breach of which an action would lie. The class of cases cited by the plaintiff's counsel, in which an offer by the one party and an actual performance by the other, has been held to be a sufficient acceptance to uphold the contract, establish a proposition, which is not applicable to the case at bar. Here the offer was by the Executive Committee to perform certain services on certain conditions, and they claim that Gordon accepted the offer, and that a contract was thereby created, for a breach of which this action is brought. But one of the terms of the offer was that they would perform no service in behalf of property not registered and subscribed upon. Gordon failed to register his property, or to make the subscription in accordance with the offer. The offer, therefore, was not accepted, and no contract was created. We think the principle governing the case is discussed and correctly defined in the case of *Governor, etc.*, v. *Petch*, 28 Eng. Law and Eq. R. 470. In that case a charitable corporation advertised for bids to furnish certain meats; and it was stated in the advertisement, that after a bid was accepted, the successful bidder "will have to sign a written contract," etc.

The plaintiff's bid was accepted, and he proceeded to furnish the meats; but failed to enter into the written contract. The action was upon the contract, to recover the price of

the meat at the stipulated rate; and the Court decided that having neglected to enter into the written contract, the plaintiff had failed to accept the offer according to its terms, and consequently there was no contract, such as was declared upon. The same rule is applicable to this case. Gordon did not accept the offer of the committee according to its terms, and there was, therefore, no contract in the form declared upon. The most that can be claimed is that Gordon agreed he would at some future time accept the offer of the committee, but he never did accept it.

Judgment and order affirmed.