[No. 681.]

ROBERT MORRILL, Appellant, *v.* THE TEHAMA CONSOLIDATED MILL & MINING COMPANY, Respondent.

Contracts must be Reciprocal.—It is essential to the existence of every contract that there should be a reciprocal assent to a definite proposition, and when the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, an assent thereto in any other or different mode will not be presumed.

Contracts—When must be Reduced to Writing and Signed.—Where parties enter into an agreement, and the understanding between them is that it is to be reduced to writing, or, if it is already in a written form, that it is to be signed before it is acted upon, or is to take effect, it is not binding upon them until it is so written or signed.

Promises—When must be Concurrent.—In contracts where the promise of the one party is the consideration for the promise of the other, the promises must be concurrent and obligatory upon both at the same time.

CONTRACT—WHEN THE GIVING OF A BOND IS ESSENTIAL TO THE VALIDITY OF.—Where the agreement between the parties required the execution of a bond, to be given by one of the parties and signed by two sureties, conditioned for the faithful performance of the contract on his part: *Held*, that it was essential to the completion of the contract that the bond should be so executed.

CONTRACT—BOTH PARTIES MUST ACCEDE TO ITS TERMS.—To render a proposed contract binding, there must be an accession to its terms by both parties. A mere voluntary compliance with its conditions by one who had not previously assented to it does not render the other liable on it.

APPEAL from the District Court of the Eighth Judicial District, White Pine County.

The complaint in this action alleges that on the 12th day of September, 1872, the defendant made and entered into an agreement in writing that the said plaintiff should deliver to the defendant at its mill in White Pine County, three thousand five hundred cords of cord wood on or before the 1st day of February, A. D. 1873; that in consideration of the terms and conditions of said agreement being kept and performed by said plaintiff, the said defendant then and there agreed to pay said plaintiff seven dollars per cord for each and every cord of wood so delivered; that said plaintiff was to deliver not less than four hundred cords per month, and that said defendant was to pay for the same in semi-monthly payments of sixty-six and two-thirds per cent. on all wood so delivered, and to make full payment to the plaintiff of all that was due him when the said three thousand five hundred cords had been delivered according to the agreement; that all the terms and conditions of said agreement were complied with on the part of plaintiff up to the 22d day of October, 1872, and plaintiff had, up to that time, under said agreement, delivered to defendant at its mill one thousand cords of wood; that plaintiff was ready and willing to deliver, and offered to deliver, in strict accordance with the terms and conditions of said agreement, the balance of said wood before the 1st day of February, A. D. 1873, and would have delivered the same but for the acts of defendant; that said plaintiff was prevented from

further complying with the terms and conditions of said agreement by the acts of said defendant; that on the 22d day of October, A. D. 1872, the defendant notified this plaintiff not to deliver any more wood, and refused to receive any more wood from this plaintiff, or to pay plaintiff for any of the wood delivered, or to be delivered, under said agreement and in pursuance of the terms and conditions thereof; that said defendant has ever since refused, and still does refuse, to receive the said two thousand five hundred cords of wood, or any part thereof, or to pay plaintiff therefor, or any part of the moneys due on said agreement, to plaintiff's damage in the sum of ten thousand dollars. The answer denies the allegations contained in the complaint. Defendant had judgment for costs, and plaintiff appeals.

*Robert M. Clarke,* for Appellant.

I. But one question is fairly presented by the record in this case, to wit: Is the decision of the court contrary to the law? The findings of fact are satisfactory. The sole question is, was there a contract, and do the facts found entitle the appellant to recover? The contract is not one which, under the statute of frauds, is required to be in writing. The terms having been fully agreed upon by the parties, reduced to writing and signed by respondent (appellant having assented to the contract as written, and entered upon its performance), it became and was a valid agreement, which neither could evade, and both must perform, unless, as is held by the court below, appellant's failure to give the bond with the two sureties agreed upon, prevented it from ever becoming of binding effect. I affirm it to be the law that giving the bond was not a condition upon which the validity of the contract hinged—that it was an independent, not a dependent stipulation. But granting the position of the court in this respect, it is clear for other reasons that appellant should have judgment.

II. The withdrawal of the contract and bond signed by one of the sureties, from the office of Waters, by the re-

spondent, and the receiving of nine hundred and sixty cords of the wood, was a waiver of the particular bond stipulated. The bond was given for respondent's benefit, exclusively to secure the performance of the contract by appellant, and if, before it was completely executed, respondent permitted appellant to enter upon the performance of the contract, and received part of the wood, it waived the bond, and became liable upon the agreement.

III. The respondent is certainly bound so far as the agreement was performed; that is, for the nine hundred and sixty cords of wood which it received. Suppose all the wood had been delivered, could respondent refuse to pay for it because the bond to secure its delivery had not been given? So absurd and unconscionable a position will not be held by the other side. But what is true of the whole, is true as to the part which was delivered. To deny recovery for the wood would be contrary to every principle of the law, and a gross fraud on appellant.

*Garber & Thornton,* for Respondent.

I. This is an action founded upon a declaration or complaint in *special* not *general* assumpsit. There is but one (if one) assignment of error in the bill of exceptions or statement. The proposition that respondent is certainly bound so far as the agreement was performed, that is, for the nine hundred and sixty cords of wood which it received, is clearly untenable.

II. To say that a party may sue on an express and recover on an implied contract, is to subvert all the essential rules of pleading. For the allegation that there is an express contract, absolutely excludes the idea of an implied one. (Lawe's Pl. P. 22; 2 Wallace, 9; 14 Grattan, 453; 1 Watts & Serg. 304; 2 Vroom. N. J. 336; 28 Ill. 378; *Laduc* v. *Seymour,* 24 Wend. 64; *De Boom* v. *Priestly,* 1 Cal. 206; 1 Parsons' Contracts, 523, note i; Ibid. 520; 1 Chitty Pl. P. 306; 1 Archbold's Nisi Prius, 125, title Assumpsit, 11.) The plaintiff had three alternatives: First. To sue on the contract, on the theory that it was binding,

and aver performance. Second. To assume the existence of the contract and aver that he was prevented from performing. On such theory, he could not sue in general assumpsit. (2 Greenleaf Ev. 8, 104.) Third. To put two counts in his complaint—one in special, the other in general assumpsit. In this event, if he failed to prove the contract or to establish any essential fact constituting his first cause of action, he might in a proper case, on proper proof, recover *quantum valebat*. But he could not, on one count, claim a recovery both on an express contract and on an implied one; for no case has ever yet held that two such inconsistent causes of action can be joined in one count. There cannot coexist an express and implied contract. But here the pleadings do not go upon any implied contract. The suit was on the contract, and the proof of the existence of the contract was essential. (26 Cal. 12.)

III. But even if plaintiff can abandon the express contract, which "does constitute the basis of the action" (26 Cal. 21), and resort to an implied contract which could exist only in the supposition of the non-existence of the express one, this second proposition of appellant is unmaintainable. No case is presented for a recovery except on the contract, because the case falls within none of the recognized exceptions to the rule that where there is an express contract the plaintiff must sue and recover on the contract, or not at all. One party to an entire agreement cannot divide it and call part of it binding. The court cannot make contracts for parties and can only enforce them as made. (*Fisk* v. *Levine*, 16 La. Ann. 29; *Northam* v. *Gordon*, 46 Cal. 52; *Boyd* v. *Hind*, 36 Eng. Laws and Eq. Rep. 566.)

The delivery of a written contract is indispensable to its binding effect, and is not conclusively proved by showing the delivery of the paper by the alleged contracting party to the other. The latter may show by parol that it was not delivered for the purpose specified in it without extraneous conditions first performed. (*Benton* v. *Martin*, 52 N. Y. 570; *Chandler* v. *Chandler*, 21 Ark. 95; *King* v. *Woodbridge*, 34 Vt. 565; *Crane* v. *Portland*, 9 Mich. 493; *Choteau* v. *Suy-*

*dam,* 21 N. Y. 181; *Callender* v. *Cosgrove,* 17 Conn. 1; *Burson* v. *Huntingdon,* 21 Mich. 416.)

The parties here agreed upon the terms of the contract. One term was the giving of the bond. The bond was drawn up at the same time as the contract. Both papers, on elementary principles, constituted one agreement. The two embodied the understanding of the parties in written form. It is also expressly found that Waters was employed to draw up both writings, and it was agreed that both should be deposited with Duren for safe keeping. The bond and contract were both, and at the same time and with the same conditional agreement, left in the hand of Waters. The philosophy of the law as to contracts as well as deeds is, that some overt act must be done to evidence the consummation or acceptance or finality of that before intended as inchoate. And there is no hardship in this. Morrill made the agreement with his eyes open. All he had to do was to comply with the terms imposed. Waters had no right to deliver the contract to Duren till those terms were complied with; and if he had done so, the act, like every delivery of an escrow contrary to the conditions imposed, would have been entirely nugatory and void. The fact stands out in bold relief, that the only proposition upon which the minds of these parties ever met, the only agreement they ever made, was, that both should sign the agreement; and at the same time and as part of the same transaction, Morrill should give the bond, and that then both papers should be delivered by handing them to Duren, and that then the contract should be complete.

IV. The respondent derived no benefit whatever from the wood delivered. It never accepted it. It was left there at Morrill's disposal, and was afterwards sold in payment of his debts. He could have taken it away at any time, and if by so doing he lost his labor in hauling it he was himself to blame for it, for he delivered it in conscious violation of his express agreement. It was by no fault or *laches* of defendant that it was allowed to be piled on its premises. McDonald gave the order to pile it, in the reasonable expec-

tation that Morrill would do as he agreed.  The corporation
was under no obligation to forbid Morrill from piling it
there.  He knew all the facts.  (*Tottman* v. *S. F. Co.*, 20
Cal. 96.)  All that took place between him and McDonald
and the man who piled the wood, was on the faith of the
agreement they had made.  There is no proof of the value
of the wood or the damage resulting to Morrill if he lost the
hauling.  If there was no agreement completed, how will
his *quantum meruit* be computed?  The contract cannot be
called in, for. it never was executed.  It matters not that
McDonald showed the man where to pile it.  This was part
of the original contract which was never consummated.
But here is no room for implication.  There was an express
understanding which covered the whole ground.  From and
after the time Morrill violated that, there is not even a pre-
tense of any corporate act making a new contract, or from
which a promise or request or anything else could be im-
plied.  Up to that time all was inchoate, and all that
occurred before it finally fell through must be blotted out
of the case.

By the Court, EARLL, J.:

This action was brought by plaintiff to recover damages
for the breach, on the part of the defendant, of a contract
which the plaintiff claims was entered into between him and
the defendant on the 12th day of September, 1872, and if he
is entitled to recover, it is upon the theory that the contract
declared on was consummated by the parties.  The action
was tried by the court without a jury, and judgment
entered for the defendant.  The plaintiff moved for a new
trial and assigned in his statement as grounds therefor, the
following:  "The evidence is insufficient to justify the
findings of the court and the conclusions of law and the
judgment thereon, in that the evidence shows that the con-
tract between the parties plaintiff and defendant was duly
executed, and that the giving of the bond formed no part of
said contract; and that the findings and judgment are
against law, in that the court finds that the non-execution

of the bond by Morrill prevented the contract from ever becoming of binding effect." The court overruled the motion, and this appeal is from the judgment and the order overruling the motion for a new trial.

The counsel for appellant, in his brief on file, says, "The findings of fact are satisfactory," and from our examination of the evidence presented by the record, we are of opinion that the findings are as favorable to appellant as the evidence will justify; hence the question for our consideration is, did the court err in its conclusion of law from the facts found? The facts found by the judge of the court below are as follows: "In the month of September, 1872, the defendant, a mining corporation of California, was engaged in business in White Pine County, Nevada; its agent, Archibald McDonald, had power to make in its behalf a contract, such as that alleged in the complaint. At the time mentioned, the plaintiff and defendant, by its agent McDonald, agreed upon the terms of a contract for the delivery by Morrill of three thousand five hundred cords of wood at the mill of defendant then in process of construction. The terms of said agreement were precisely those set forth in the complaint herein. They further agreed that the contract should be reduced to writing, signed by both parties, and deposited with Duren for safe keeping. At the same time McDonald required that Morrill should give a bond with two sureties, who were agreed upon, in the penalty of five thousand dollars, conditioned for the faithful performance of the contract. They employed a lawyer, Waters, to draw up the writings. He made a rough draft of the contract in the terms stated in the complaint, read it to Morrill and McDonald, who both assented to it fully, and at their request made a fair copy, which was on the same day, September 12, 1872, signed by defendant by its agent McDonald, who left it with Waters to be signed by Morrill, and afterwards deposited with Duren. Waters at the same time drew a bond which Morrill procured to be executed by one of the sureties agreed upon, but not by the other. Morrill did not sign the contract, but immediately com-

menced his preparation to commence delivering wood.
While so engaged, Waters, in whose possession the partly
executed contract and bond remained, departed from the
State September 16, leaving the papers in his office, from
which, on that day, the contract was removed by a clerk of
McDonald, for the purpose of copying it.  Later in the
same day Morrill went to Waters's office for the purpose of
signing the contract, but could not then nor ever since ob-
tain possession of it.  Being unable to find the contract,
he resumed preparations for delivering wood.  Four or
five days later McDonald departed from the State under
the impression that Morrill had abandoned the contract,
led to that conclusion by the failure of Morrill to furnish
the bond.  He was absent during the whole time Morrill
was engaged in delivering wood as hereinafter mentioned.
Prior to this, however, and while he was expecting the con-
tract to be completed, he had given directions to his subor-
dinates at the mill where to pile the wood to be delivered
by Morrill.  Shortly after McDonald's departure, Morrill
commenced delivering wood at the mill, where it was
received and piled by McDonald's subordinates, in obe-
dience to his directions given as aforesaid.  On the 12th
day of October, a month after the date of contract, Morrill
had only delivered about two hundred cords of the wood
instead of the four hundred cords stipulated to be delivered
monthly.  But no damage occurred to defendant by reason
of his failure in this respect, and no complaint was made
on account of it.  McDonald's subordinates continued to
receive and pile the wood, and by the 23d of October
Morrill had delivered nine hundred and sixty cords.  On
that day defendant notified him to stop delivering wood;
that it refused to receive any wood of him, or to pay for
any wood delivered or to be delivered.  Morrill hereupon
stopped delivering wood and commenced this action."

From the facts thus found we think, independent of the
giving of the bond, that the contract declared on was never
completed.  It is true the parties verbally agreed to the
terms of the contract as stated in the complaint, but it was

to be reduced to writing and signed by both parties. They employed Waters to prepare the contract according to the terms thus agreed upon, which he did, and it was signed by McDonald as agent for defendant, but the plaintiff, for what reason does not appear, failed to sign it at the same time. True, four days afterwards, and after Waters had departed the State, he went to Waters's office for the purpose of signing it, and failing to find it, proceeded to act under its terms. But the contract thus prepared was to be signed by both parties; it contained mutual obligations, each of which being the consideration for the other, and as no time was stipulated in which it was to be signed by either, the legal presumption is, that the signing thereof was to be concurrent, and as the plaintiff failed thus to sign it, no reciprocal assent thereto can be implied. "There is no contract unless the parties thereto assent; and they must assent to the same thing, in the same sense." (1 Parsons on Con. 475.) It is essential to the existence of every contract, that there should be a reciprocal assent to a definite proposition, and when the parties to a proposed contract have themselves fixed the manner in which their assent is to be manifested, an assent thereto, in any other or different mode, will not be presumed. Notwithstanding the instrument declared upon was fully executed on the part of defendant, the contract was still incomplete, and neither party bound thereby.

"A contract purporting to be made between several parties, containing mutual covenants, of which those of one party are the consideration of the others, must, to be valid, be executed by all, and cannot be enforced against one executing, by another who fails to execute." (*Tewksbury* v. *O'Connell*, 21 Cal. 60; *Townsend* v. *Corning*, 23 Wend. 435.) In the last-mentioned case, Mr. Justice Bronson, in delivering the opinion of the court, says: "The defendant is not bound by the alleged contract. Although he signed and sealed, the execution of the instrument was not completed, and it is not his deed. What are the facts when taken in connection with the legal principles already considered? A writing *inter partes* is prepared, by which one party

covenants for the payment of money, and the other for the conveyance of lands,—each of these mutual covenants being the consideration for the other.  One party sits down and executes the deed; but the other stops short, and for some cause—no matter what—does not execute the instrument.  It is impossible, I think, to maintain, that the party who has refused or neglected to bind himself, can set up the instrument as a binding contract against the other party.  There was, I think, a condition, implied from the nature of the transaction, that the signing of one party should go for nothing unless the other signed also.  But whether I have assigned the proper reason for the rule or not, the conclusion to which I have arrived, that the party who signs cannot be bound when the execution is thus incomplete, is not only in accordance with the justice of the case, but is well supported by authority."  The legal principles decided by the Supreme Court in that case are identical with those involved in the one under consideration, and all the cases which we have found, or to which our attention has been called, hold the general rule to be, "that where parties enter into any agreement, and the understanding is that it is to be reduced to writing, or if it is already in a written form, that it is to be signed before it is acted on or to take effect, it is not binding until it is so written or signed." (*Boyd* v. *Hind,* 36 Eng. Law & Eq. 566; *Fisk* v. *Levine,* 16 La. Ann. 29; *Dodge* v. *Hopkins,* 14 Wis. 630; *Townsend* v. *Hubbard,* 4 Hill, 351; *Crane* v. *Portland,* 9 Mich. 493.)  "In contracts where the promise of the one party is the consideration for the promise of the other, the promises must be concurrent and obligatory upon both at the same time." (*Tucker* v. *Wood,* 12 Johns. 190, 192; *Keep* v. *Goodrich,* Id. 397.)  But the rule is otherwise where the consideration is not the promise, but the doing of some act, which being done would constitute a valid consideration; in such case the assent thereto may be shown by doing the act.  In the case at bar, the consideration was dependent upon the mutual promises of the parties, and in order to consummate the contract required an assent thereto "in

the precise terms offered." The terms of respondent's offer included not only the signing of the written agreement, but also the furnishing of the bond executed by the two sureties agreed upon; and it was essential to the completion of the contract that respondent's offer thus made should be met on the part of appellant "by an acceptance corresponding entirely and adequately" therewith; because "it becomes a contract only when the proposition is met by an acceptance which corresponds with it entirely and adequately." (1 Parsons on Contracts, 476.) Hence we concur in the decision of the court below, "that the contract sued on never became binding on the defendant on account of the failure of plaintiff to furnish the bond." But it is claimed by the counsel for appellant that respondent permitted appellant to enter upon the performance of the proposed contract and received part of the wood, and thereby waived the bond and became liable upon the agreement; but it does not appear, from the facts found, that respondent was cognizant of the attempted performance on the part of appellant until after the nine hundred and sixty cords of wood were delivered at the mill; on the contrary, it appears that before any wood was thus delivered, McDonald, who was the only person authorized to represent respondent, had left the State under the impression that the contract was abandoned by appellant, and was absent during the whole time appellant was engaged in delivering the wood. But the rule which declares performance an acceptance of the terms of a proposed contract, cannot be applied in this case. "To render a proposed contract binding there must be an accession to its terms by both parties. A mere voluntary compliance with its conditions by one who had not previously assented to it does not render the other liable on it." (*Johnson* v. *Fessler*, 7 Watts, 48; *Ball* v. *Newton*, 7 Cush. 599.) See also the case of *Northam* v. *Gordon* (46 Cal. 582), cited by respondent's counsel, in which Mr. Justice Crockett, in rendering the decision of the court, uses the following language, which is equally applicable to the case under consideration: "The class of cases

cited by the plaintiff's counsel, in which an offer by the one party and an actual performance by the other, has been held to be a sufficient acceptance to uphold the contract, establish a proposition which is not applicable to the case at bar. * * * Gordon failed to register his property or to make the subscription in accordance with the offer. The offer, therefore, was not accepted, and no contract was created. We think the principle governing the case is discussed and correctly defined in the case of *Governor, etc.*, v. *Petch* (28 Eng. Law & Eq. R. 470). In that case a charitable corporation advertised for bids to furnish certain meats; and it was stated in the advertisement that after a bid was accepted, the successful bidder will have to sign a written contract, etc. The plaintiff's bid was accepted, and he proceeded to furnish the meats, but failed to enter into the written contract. The action was upon the contract to recover the price of the meat at the stipulated rate; and the court decided that having neglected to enter into the written contract the plaintiff had failed to accept the offer according to its terms." The rule thus applied is decisive of this case. The action is upon the contract. Morrill neglected to sign the written agreement, and also neglected to give the required bond; he consequently failed to accept respondent's offer according to its terms, and there was, therefore, no contract such as was declared upon.

Judgment affirmed.