## JACOB CUMMER AND WELLINGTON W. CUMMER v. LEWIS C. BUTTS.

*Cancellation of contract for "good cause."*

A contract stipulated that on sixty days' notice it might be cancelled by either party for "good cause." *Held* that the term "good cause" could not be reduced to legal certainty and was ineffective, and that any revocation in good faith was sufficient.

Error to Kent. Submitted October 17, 1878. Decided January 31, 1879.

ASSUMPSIT. Defendants bring error.

*Blair, Kingsley & Kleinhans* for plaintiffs in error.

*Simonds & Fletcher* for defendant in error.

GRAVES, J. The plaintiffs in error were lumber dealers, and in November, 1876, they commissioned the defendant in error to make sales for them. The transaction was reduced to writing in the form of a proposition made by Butts and accepted by Cummers. The writings were as follows:

"MORLEY, MICH., Nov. 28th, 1876.
*Messrs. J. Cummer & Son:*

GENTS:—I will take your stock of lumber to sell in States Ohio, Pennsylvania, Indiana, Kentucky, New York, and New England and other States, where it may seem to be to best interest to sell, at (1.00) one dollar per M. com's upon all grades of stock M. foot and pay my own

traveling expenses, you to furnish me with say two million feet at Morley, and four million at Clam Lake, or in all about six million feet. I shall at selling, sell at prices current in the different markets, striving at all times to get full market rates. I shall expect you to furnish me the full am't at least of six million to dispose of or thereabouts, and more should the trade look as if it should pay you. You to agree not to crowd or solicit orders, but in case orders are sent you which are from parties I have not seen or solicited to open trade, I shall not expect you to allow me any com's. I agree to devote my time that seems necessary to dispose of your stock at best and in most expeditious manner, and also agree not to sell for other parties except in this case: Suppose I was to take an order you had not the stock to fill, I would first give you the privilege and if you could not I am at liberty to buy or sell to fill such order from others, the same to govern as to shingles, lath or hard wood lumber. My intention is to first make your stock and business my first and sole business, and give my time and attention and knowledge to make it pay all it will for you.

You are to furnish me full list of parties you have sold, rates of freight to different points, and post me as much as possible as to the business standing of customers. I will use due and proper diligence while selling to not sell parties unworthy of credit, and you to have privilege of not filling any orders whom you know are not worthy of credit, which I may send you, until such time as you are satisfied with responsibility of such parties.

Will also agree that for good cause this agreement shall be cancelled, upon sixty days notice by either party. My idea is to handle your stock to best advantage as to price, and dispatch in disposing of same, and trust I can do it to our mutual profit and satisfaction.

Yours resp'y,

LEWIS C. BUTTS."

"MORLEY, November 29, 1876.

*Lewis C. Butts:*

SIR—Your proposition dated 28 inst. carefully considered. We accept it, making no exceptions.

Yours with respect,

J. CUMMER & SON."

Butts proceeded to act under this arrangement and made several trips and effected sales of a considerable quantity of lumber, but much less than six million feet.

The plaintiffs in error became dissatisfied, however,

and assuming that they were entitled to do so, proceeded on the 14th of April, 1877, to terminate the relation by notice as specified in the contract. They paid him for the commissions earned up to that time, and refused to recognize the further continuance of the agency and denied his right to claim anything more.

He insisted that there was no sufficient cause for his dismissal, and that he was entitled to whatever gains or profits he might or would have made if the arrangement had not been interrupted, and he brought this suit to enforce such claim and was allowed to recover $500.

Now the written agreement expressly provided for a revocation by either party on a notice of sixty days and prescribed no other condition than that there should be "good cause." It made no provision that the party who should thus put an end to the contract in accordance with itself should indemnify the other for the loss of expected gains, and of course contemplated nothing of that kind. Such a termination of the contract would be pursuant to itself, and would have the assent of the parties as originally given in the instrument. There would be no breach to give rise to a cause of action.

The parties have differed radically as to whether plaintiffs in error had "good cause" for terminating the agency, and there was great controversy about it at the trial. The judge attempted to construe this expression as it stood in the writing and facing towards each party, but it does not seem to us that he succeeded in ascertaining the meaning and full extent of the meaning which it is probable the one party or the other intended and which the phrase would not be too narrow to cover. He told the jury there might be other grounds of good cause than those noticed, and submitted the case under this intimation that other grounds might be found. The difficulty is inherent. It exists in the terms adopted by the parties.

The requirement of "good cause" as something on

which the right to revoke by one or the other should depend, is as here introduced too vague to be fairly intelligible.    It is manifestly applied to each party, but the phrase "good cause" in such connection as to parties and subject matter, has no such distinct sense as to furnish a common and intelligible criterion for the parties, or any determinate sense whatever.    It is impossible to say that the wills of the parties concurred and that each meant exactly what the other did, or even to say what either meant.    The room for difference of opinion is immense, and the case is one where the parties have failed to express themselves in terms capable of being reduced to lawful certainty by judicial effort.    As employed, the expression has no frontier of meaning which can be defined.    Metc. on Cont., 316; Bishop on Cont., §§ 22, 581; 2 Pars. on Cont., 561; Domat [Cush. ed.] Art. 178, § 2, Pt. 1, B. 1; 1 Chitty on Cont., 92, 93.    See also *Crane v. Partland,* 9 Mich., 493; *Caswell v. Gibbs,* 33 Mich., 331; *Greene v. Bateman,* 2 Wood. & Min., 359; *Smidt v. Tiden,* L. R., 9 Q. B., 446: 9 Eng., 379; *Hazard v. New England Marine Ins. Co.,* 1 Sumn., 218; *Buckmaster v. Consumers' Ice Co.,* 5 Daly, 313; *Coles v. Hulme,* 8 B. & C., 568, 573; *Cooper v. Hood,* 28 L. J. C., 212; *Guthing v. Lynn,* 2 B. & Ad., 232: 1 Sugd. V. & P. [8 Am. ed.]; 134; *Bayley v. Fitzmaurice,* 8 El. & B., 664: s. c. 9 H. L. Cas., 78.

The passage in question being ineffective on account of its radical uncertainty, there was nothing to detract from the exercise of the right of revocation as it actually occurred, provided the plaintiffs in error acted in good faith.    Nothing more was required.    On this record the claim for profits is at least irrelevant.

As a consequence and without considering other matters, the judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.