## HENNESSY et al. v. BOND.

(Circuit Court of Appeals, Ninth Circuit. October 26, 1896.)

### No. 197.

1. PRINCIPAL AND AGENT—BOND FOR TITLE.
   Defendant entered into an agreement whereby he authorized a certain person to procure for him a bond or agreement for a deed to certain mining claims, from plaintiffs, who were the owners thereof. The agent procured the agreement, which was drawn up in the form of an indenture, and contained stipulations for certain payments by defendant. It was delivered to defendant, but he never signed it. *Held*, that plaintiffs could not recover upon such instrument (Ambler v. Whipple, 20 Wall. 546, followed), nor could they declare upon the agreement between defendant and his agent.

2. SAME—VERBAL AGREEMENT OF AGENT.
   Defendant entered into a contract by which a certain person, as his agent, agreed to procure for him a "bond or agreement" for a deed to certain property, and which also provided that defendant would assign, "by a separate instrument in writing," an interest in such bond or agreement to the agent. *Held*, that the agreement to be procured by the agent was a written one, and that the agent could not bind defendant by a verbal agreement with the owners of the property.

In Error to the Circuit Court of the United States for the District of Washington.

This was an action by John J. Hennessy, William M. Hennessy, John Seaton, Frank W. Flint, and John McGuigan against Hiram G. Bond. The court sustained a demurrer to the complaint, and entered judgment for defendant. Plaintiffs bring error.

George Turner and E. C. Hughes, for plaintiffs in error.

Andrew F. Burleigh, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

KNOWLES, District Judge. Plaintiffs commenced this action against the defendant in the court below upon an agreement in writing wherein it is alleged that plaintiffs in error agreed to convey to said defendant certain mining claims situate in West Kootenai district, province of British Columbia, in what is known as the "Kaslo-Slocan Mining Region," and that said defendant agreed to pay them therefor the sum of $300,000,—$25,000 at the time of the delivery of the bond for a deed, or the said agreement for a deed, and the balance on or before the 15th day of September, 1892. From the allegations in the complaint, it appears that on the 18th day of January, 1892, the said Bond entered into an agreement with one S. S. Bailey in which he authorized him (Bailey) to procure a bond or agreement for a deed to said mining claims from the owners thereof. The said Bailey did procure an agreement or bond for a deed, as would appear from the allegations of the complaint and Exhibit B, which is made a part of the complaint by a special allegation to that effect. In this agreement, after providing for plaintiffs making a deed to defendant, there were certain promises or stipulations which the said defendant was to enter into. It is alleged in the complaint "that by the terms and conditions of the said bond or agreement Exhibit B, as well as by the terms and conditions in said agreement Exhibit A, the said defendant undertook and agreed to pay unto these plaintiffs the sum of twenty-five thousand dollars upon the execution and delivery of the aforesaid contract, bond, or agreement." An examination of Exhibit B discloses no such undertaking on the part of the defendant. By it plaintiffs were not required to deed the said mining claims without the payment of the said $25,000 on the delivery of the agreement, and the $275,000 in September following. But he was to agree to certain things connected with the working of the said mining claims, and the extracting of ore therefrom, and the sale thereof. The agreement is drawn up as an indenture. While it is alleged that the agreement was delivered to defendant, it is nowhere alleged in the complaint that he executed or signed it. There are no allegations showing that by his conduct he was estopped to deny that he signed it. From the very terms of the agreement, it is evident that it was contemplated that plaintiffs and defendant were to both sign this agreement. The question is presented, can plaintiffs recover on this instrument? The case of Ambler v. Whipple, 20 Wall. 546, is conclusive against plaintiffs upon this point. In that case the supreme court says:

"But it is argued that the paper was procured from Whipple by Martin, as the agent of Ambler, at Ambler's request, and was signed by Whipple and delivered to Martin; that Martin delivered it to Ambler, who received a copy of it without objection, and promised to sign it. Admitting all this to be true,

it is very clear that both parties intended to have a written instrument signed by each as the evidence of any contract they might make on that subject, and neither considered any contract concluded until it was fully executed. Under these circumstances, Ambler had a right to decline to sign the paper, and until he signed it he was not bound by it. It was not drawn up by him, nor at his dictation. It was first signed by Whipple, and drawn up by him, or in his presence, and made to suit his purposes. It is idle to say that, because Ambler took a copy of it from Martin to examine, he became a party to it, though he never signed it."

This case fully meets the case at bar on this point. It is supported by the cases of Morrill v. Mining Co., 10 Nev. 125; Townsend v. Corning, 23 Wend. 436; Tucker v. Woods, 12 Johns. 190; Keep v. Goodrich, Id. 397.

There is a contention that, by virtue of the contract with Bailey, defendant undertook to pay plaintiffs in error the said $25,000. But plaintiffs were not a party to that contract. It is not alleged that Bailey was their agent, or that there was any fiduciary relation between them. The contract, by its terms, purports to be a contract between Bailey and Bond. By it, Bailey is to act as the agent of Bond. There is nothing in the contract which shows that it was made in any particular for the benefit of plaintiffs. No consideration moves from them to Bond. There was no obligation upon Bailey to pay plaintiffs $25,000, or any other sum, and he never did propose to contract to pay this sum on his behalf to them. Under the authorities, it is settled that plaintiffs could not declare on this contract of Bailey and Bond. Woodland v. Newhall's Adm'r, 31 Fed. 434; National Bank v. Grand Lodge, 98 U. S. 123; Durnherr v. Rau, 135 N. Y. 219, 32 N. E. 49; Clark, Cont. 513–521.

It is urged that Bailey entered into the agreement verbally with plaintiffs, for and on behalf of Bond, to the effect named in the written agreement, which was not signed by Bond, and that he (Bond) is bound by this verbal agreement to pay this sum of $25,000. It is evident that Bond expected Bailey to procure from plaintiffs a written contract or agreement. The language in the contract with Bailey is that he shall procure for him a bond or agreement. A bond is a contract in writing, formerly always under seal. An agreement to convey mining claims is usually in writing. In some sections, such an agreement is within the statute of frauds. While in the complaint it is set forth that the agreement between Bond and Bailey authorized him (Bailey) to procure from plaintiffs a bond or agreement for a deed "upon the following conditions," the agreement between Bond and Bailey, which is made a part of the complaint by allegations therein, and marked "Exhibit A," contains "the provision that said Bailey, as the party of the first part, hereby agrees to at once undertake to procure for said party of the second part [Bond] a deed or agreement for a deed. * * * Said bond or agreement is to contain the following provisions." In the second stipulation of Bond, specified in this agreement with Bailey, it is provided that he (Bond) will at once assign, by a separate instrument in writing, to said party of the first part, an undivided one-fourth interest in said bond or agreement, free from any charge or expense to said party of the first part (Bailey). From

these facts I think it is evident that it was contemplated by Bond that Bailey should procure for him a written agreement; that he did not intend to give him (Bailey) authority to bind him (Bond) to pay $25,000 upon a verbal agreement of plaintiffs to convey to him certain mining claims. In the next place, it is evident that plaintiffs have based their action upon a written agreement, and, while it is not entirely certain whether, in the agreement of Bond and Bailey, or the agreement which Bond did not sign, and which is marked "Exhibit B," I think the action must be considered as based upon the latter. They did not declare upon the verbal agreement alleged to have been made by Bailey for and on behalf of Bond.

For the reasons assigned, I find no error in the ruling of the court below in sustaining the demurrer to the complaint. Judgment is affirmed, with costs.