JOHN W. LONG v. B. and J. A. DAVIDSON.

*Contract—Custom—Expert—Evidence.*

1. When words, which by an established, uniform and general custom have acquired a specific meaning, are used in a contract, the Courts will give them that interpretation, though some of the parties to the agreement were ignorant of the custom.

2. When such words or custom prevail among those who are engaged in a particular science, trade or calling, persons engaged in such science, &c., are competent to testify to the meaning of such words and the existence of such customs.

3. It is the province of the jury to ascertain what the contract was, but when ascertained it is the province of the Court to interpret it.

CIVIL ACTION, commenced before a Justice of the Peace and carried, by appeal, to the Superior Court of ALAMANCE County, and tried before *Gilmer, J.,* at March Term, 1888.

The plaintiff's demand was for $163.86, as a balance due upon a contract with the defendants for building a house. The defendants answered that they had over-paid the plaintiff the sum of $7.53, for which they set up a counter-claim.

On the trial the plaintiff testified in substance that, he

contracted with the defendants to build a brick house for them; that their express agreement was, he was to be paid $2.40 per thousand for laying bricks, to be estimated by "wall count, solid measure." Upon being asked what was meant by "wall count, solid measure," which was objected to by the defendants, the witness, after stating that he had been in the business of contractor and laying bricks and building brick houses for many years, was allowed to testify that "wall count, solid measure," had a certain meaning among brickmasons, and contractors for brick work, "which obtained universally, and especially in Alamance and Guilford counties," in which latter county defendants' house was built. The witness was further permitted to testify, after objection by defendants, that, among those skilled in laying brick and among contractors for such work, the words "wall count, solid measure," meant that "the walls of the building were to be estimated, without reference to windows or doors, as if the walls were solid work, and that the bricks were to be computed at the rate of eighteen (18) brick to every cubic foot in the wall. That, estimating the defendants' house by this rule, the number of bricks for which he was entitled to pay was 224,835, * * * * that defendants had paid plaintiff on his work at divers times sums amounting to $380.05, thus leaving a balance due him of $163.80."

The defendant, Berry Davidson, then testified in substance that, the plaintiff agreed to lay the brick for $2.40 per 1,000. "That he asked the plaintiff whether he would charge for the doors and windows as if they were laid in brick, and was told that he would;" that with this understanding the contract was made; that at the time not one word was said about "wall count, solid measure;" that defendants purchased the brick with which the house was built; that there was only 155.219 used, which, at $2.40, came to $372.52, which was $7 53 less than he had paid the plaintiff; that he knew nothing of any such rule for count-

ing as was alleged by the plaintiff to obtain among masons, contractors, &c., and that the first he knew of any purpose on the plaintiff's part to estimate the number of bricks by any such rule was after the work was done, when he objected, and insisted on ascertaining the number of brick by contract count."

Witness also testified that he was a builder and contractor, and had worked in stone and brick, and that the brick used were larger than the average size, being $8\frac{1}{2}$x$4\frac{1}{4}$x3, the usual size being 8x4x3.

J. W. Long testified to the same fact, and that owing to the size of the bricks it required from 34,000 to 37,000 less to do the work ; that 18 bricks of the common size made a cubic foot, while $14\frac{1}{2}$ of the size used made a cubic foot.

The plaintiff introduced other experts, who testified that the word " wall count, solid measure," had an established signification among brickmasons and contractors, and that they meant that the walls of the building were to be estimated as solid, without reference to windows and doors, and the brick to be computed at 18 per cubic foot; to all which defendants excepted.

Defendants then introduced T. C. Oakley and T. S. Christian, builders and contractors in brick work, who, in answer to the question as to how they estimated brick work and what was the usage in Durham among brickmasons and contractors, said it depended wholly on the contract; that sometimes parties would contract with reference to size of the brick, and when under the usual size it was usual to charge more per 1,000.

On cross-examination they testified that among brickmasons and contractors by " wall count, solid measure," would be universally understood to mean that the walls were to be estimated as if the doors and windows were laid solidly in brick, and the number of bricks computed at 18

per cubic foot, "wall count, solid measure," being terms of art amongst masons, contractors and others.

The defendants insisted that the jury should find the terms of the contract as made by the parties, and that it was not competent for the plaintiff to offer evidence to explain the terms used by the parties, and that no custom or usage could be shown " unless the same was reasonable, certain, uniform and universal, and known to the defendants or brought to their knowledge at the time contract was made, and that the proper mode of counting the brick in the walls was made by actual count."

His Honor instructed the jury that when the terms of a contract are ascertained, its construction is a matter of law for the Court, but that when, as in this case, the parties differ as to the terms of their contract, the plaintiff saying that it was expressly stipulated between them that the number of bricks were to be ascertained by "wall count, solid measure," while the defendants testified that no such agreement was made, then it devolved upon the jury to say what were the terms of the contract as entered into between the parties. That if they should find that no such terms as contended for by plaintiff, then the rule for computing the bricks in the wall would be by actual count. That if they believed that, according to the contract, it was agreed that the bricks were to be ascertained by "wall count, solid measure," then the jury must pass upon and determine the meaning of those terms, that is, if they should believe that such terms were words of art, and had a special signification among builders and contractors and others, but that after they had ascertained the meaning of such terms, it was still the duty of the Court to construe the contract. That if they should believe that the parties to this contract stipulated that the count of the brick was to be made by "wall count, solid measure," and that these terms were terms of art, and meant amongst contractors, builders and others that the count was to be made by ascertain-

ing the number of cubic feet in the wall and then multiplying that number by eighteen (18), as the number of bricks of average size needed to make a cubic foot, then they should find for the plaintiff. But, if they believed that no such terms as these were used, or that, if used, they had no such signification, or were not terms of art (and it was the duty of the plaintiff to satisfy the jury upon all these points by a preponderance of evidence), then they should find for the defendants.

To this charge the defendants excepted. There was a verdict and judgment thereon for the plaintiff, from which defendants appealed.

*Mr. John W. Graham*, for the plaintiff.
*Mr. F. H. Whitaker*, for the defendants.

DAVIS, J., (after stating the case.) Whether the contract was that the bricks were to be laid at $2.40 per thousand "wall count, solid measure," as insisted by the plaintiff, or whether nothing was said about "wall count, solid measure," and the number of brick was to be ascertained by actual count as insisted by the defendants, and about which there was conflicting evidence, was a question properly left to the jury, and all the exceptions of the defendants, both to the evidence and to the charge of the Court, may be comprehended in the single question—if the contract was that $2.40 per thousand, "wall count, solid measure," were to be paid for laying the bricks—is it competent for the plaintiff to show what was meant by those words? Did they have a confined and limited local meaning, unknown to the defendant, and different from the ordinary meaning which the words would import? Or did they have an established, uniform and universal meaning amongst those who used them? Are there two meanings conveyed by the words, one limited and local, and the other general and universal?

"A mere local usage," as was said by RUFFIN, C. J., in *Jones* v. *Allen*, 5 Ired., 473, cited by counsel for defendant, "in a small part of the country, cannot change the law," but if there is an "established, general custom, that would in truth, be the law."

The question in that case was whether the hirer of a slave (who had employed a physician to attend the slave when sick) or the owner, was liable for the medical bill. There was no evidence of an established, general custom, but the plaintiff, in that case, proposed to show "that in the section of the country where the hiring took place, it was the custom" for the owner to pay for medical attendance; this was not allowed, and the same was held 'to be law in *Cooper* v. *Purvis*, 1 Jones, 141.

If the contract was that the building was to be erected of brick at $2.40 per thousand, " wall count, solid measure," it must be that something was meant by the term used, and there is no conflict in the testimony as to what that meaning was, nor does it appear from the evidence that they had any other meaning. So far from being a local meaning, different from the general meaning, it appears from the evidence that they have one established meaning, universally understood among brick-masons and contractors. If the terms are only used in a particular trade or science or calling, the meaning must be gathered from the testimony of persons acquainted with the trade or science or calling in which the terms are employed, and it is for the jury to ascertain the meaning of the terms used; but when the terms of the contract are ascertained, the construction of the contract is a matter for the Court. *Silverthorn* v. *Fowle*, 4 Jones, 362.

It is true the defendant says that no such contract as is alleged by the plaintiff was made, and "that he knew nothing of any such rule for counting brick as was alleged;" but if the terms of the contract were as alleged by the plaintiff,

it was the misfortune of the defendant to have agreed to pay $2.40 per thousand, "wall count, solid measure," in ignorance of the meaning, and the only meaning, as appears from the testimony, conveyed by the terms used in making of the contract, and without informing himself of the fact that they had, at least, one meaning.

Affirmed.