E. T. HINOTE, PLAINTIFF IN ERROR, VS. P. BRIGMAN AND S. C. CRUTCHFIELD, SURVIVING PARTNERS OF BRIGMAN & CO. DEFENDANTS IN ERROR.

| 44 | 589 | | |
| 44 | 507 | | |
| 44 | 589 | | |
| 50 | 469 | | |
| 51 | 287 | | |
| 51 | 349 | | |
| 51 | 350 | | |
| 44 | 589 | | |
| 52 | 419 | | |
| 44 | | 589 | |
| 54 | | 198 | |
| f55 | | 486 | |
| 44 | | | 589 |
| f60 | | | 262 |

CONTRACT—LATENT TERMS OR EXPRESSIONS IN MAY BE EXPLAINED BY PAROL—WHEN CONTRACT COMPLETE—CHARGES VARIANT FROM PLEADINGS.

1. Where testimony is admitted that was not properly admissible at the time it was offered because its relevancy and pertinency was not then made to appear, the error in its admission is cured if its relevancy and pertinency be subsequently shown by other evidence.

2. Where words or phrases used in a contract have acquired a definite meaning generally or by local usage, or, when used in reference to certain things or commodities, have acquired a definite meaning among those dealing with such things or commodities, and the language used in the writing is such that the court does not understand it, oral testimony is admissible to explain the meaning of such words or phrases.

Hinote v. Brigman and Crutchfield—Statement of Case.

3. If a party sought to be charged intended to close a contract prior to the formal signing of a written draft thereof, or if he signified such an intention to the other party, he will be bound by the contract actually made, though the signing of the written draft be omitted. If on the other hand such party neither had nor signified such an intention to close the contract until it was fully expressed in a written instrument and attested by signatures, then he will not be bound until the signatures are affixed. If the written draft is viewed by the parties merely as a convenient memorial, or record of their previous contract, its absence does not affect the binding force of the contract; if, however, it is viewed as the consummation of the negotiation, there is no contract until the written contract is finally signed.

4. No recovery can be had upon a cause of action, however meritorious, or however satisfactorily proven, that is in substance variant from that which is pleaded by the plaintiff, and it is error for the court to instruct the jury that they they may find for the plaintiff upon an issue that is variant from those made by the pleadings.

Writ of error to the Circuit Court for Holmes County.

STATEMENT.

Defendants in error sued plaintiff in error and obtained judgment for $844 and costs, to which a writ of error has been sued out.

The declaration as amended consists of two counts as follows:

1. Plaintiffs complain of E. T. Hinote in an action upon a breach of contract in writing dated January 11th, 1892, whereby said Hinote bound himself to deliver unto plaintiffs at their mill on or by the first day of August, 1892, three thousand pine saw logs and to pay plaintiffs two

cents per cubic foot for sawing and squaring the same, and plaintiffs stood ready, willing and anxious to comply with their part of said contract with said defendant, who failed to comply with the same and damaged plaintiffs in the sum of $2,000, wherefore they sue and claim damages in the sum of $2,000.

2. That on the twentieth day of December, 1891, plaintiffs entered into a contract with defendant whereby he obliged himself to deliver at his own expense to plaintiffs at their mill three thousand pine saw logs by the first day of August, 1892, and to pay to plaintiffs two cents per cubic foot for squaring said logs, and defendant was to keep the timber after it was squared out of the way of the mill, and plaintiffs agreed to square three thousand saw logs for defendant for two cents per cubic foot, defendant then and there promising to sign a written agreement or obligation containing the terms of said contract whenever plaintiffs would have same prepared, and plaintiffs prepared and sent to defendant said obligation two or three weeks thereafter, which defendant signed and returned to plaintiffs, a copy of which is hereto attached as a part of the declaration; that defendant did not furnish said three thousand logs to plaintiffs as he obligated himself to do, but furnished only 1201 logs which plaintiffs squared according to said agreement, and defendant refused to furnish any more, although plaintiffs held themselves ready and were willing and anxious at all times up to the first of August, 1892, to do and perform their part of the contract, by reason whereof plaintiffs lost the profits they would have made on the squaring of 1799 logs which defendant failed to furnish, and plaintiffs were thereby prevented from making contracts with other parties to furnish them logs which they could have made had

it not been for the said contract with defendant which caused plaintiffs' mill to remain idle for ninety days at great expense to them, all which damaged plaintiffs $2,000 and therefore they claim $2,000.

The contract attached to the declaration reads as follows:

State of Florida,
    Holmes oCunty.                 January 11th, 1892.

Articles of agreement entered into this day between E. T. Hinote of the first part and Brigman & Co. of the second part, the said E. T. Hinote of the first part agrees to furnish three thousand pine saw logs at the mill of Brigman & Co. by the first day of August, 1892, and pay to the said Brigman & Co. (2 cts.) two cents per cubic foot for squaring said logs, and furthermore that he the said E. T. Hinote agrees to keep the timber after it is squared out of the way of the mill, and the said Brigman & Co. of the second part agrees to square three thousand pine saw logs for the sum of two cents per cubic foot and to square them as they are delivered to the mill, or as soon thereafter as the mill can square them, and furthermore the two cents per foot to be placed on the specifications of timber the same as inspectors fees.

Witnesses                Signed
J. J. Parker and             E. T. Hinote.
    F. G. Reeves

The pleas upon which issue was joined and trial had are as follows:

That the plaintiffs after a delivery of a portion of said logs, and after a long delay, sawed some of the timber, and told defendant that there was no money in sawing at two cents per foot and that defendant must pay more and

build or help build a waste-way, which defendant refused
to do, and plaintiffs refused to further carry out their con-
tract and this defendant was ready to verify

That plaintiffs were not damaged by failure of defend-
ant to furnish said timber to saw.

That it was expressly understood and agreed by and be-
tween the plaintiffs and defendant at the time of agreeing
upon the terms of the contract set forth in the declaration
that before said contract should become binding or effec-
tive it should be reduced to writing and signed by plain-
tiffs and defendant, and the same was reduced to writing
and signed by defendant, and forwarded to plaintiffs for
their signatures, but they never signed the same, where-
fore defendant says the writing mentioned in the declara-
tion has no binding force.

That defendant was induced to enter into the contract
mentioned in the declaration by false and fraudulent rep-
resentations of plaintiffs made to defendant that there
was plenty of large timber upon lands owned or con-
trolled by plaintiffs near enough their mill to haul there-
to to enable defendant to carry out his agreement, and
that the title to the said timber was good, whereas in truth
and in fact there was no timber of the kind mentioned
near enough said mill to haul there, except what was upon
lands belonging to the United States government, all of
which was unknown to defendant until after he signed
signed said agreement; that plaintiffs refused to accept
any timber after the making of said agreement unless it
would average thirty-five feet to the stick, although de-
fendant offered to haul the requisite number of logs to
said mill of less than that average which plaintiffs de-
clined to receive and saw, and plaintiffs tried to induce
38 S. C.

defendant to cut the logs of the twenty-five feet average from United States government lands near the mill, saying no one would find out the fact until after the logs were removed where they could not be reached by process of court, but defendant declined to cut said logs from government lands.

That defendant offered to deliver at the plaintiffs mill the requisite number of pine saw logs to carry out the alleged agreement of an average less than thirty-five feet, but plaintiffs declined to receive or square the same.

Other facts appear in the opinion.

*Francis B. Carter,* for Plaintiff in Error.

*D. L. McKinnon,* for Defendants in Error.

(Mr. Justice CARTER, being disqualified, took no part in the decision of this cause. The Chief-Justice and Mr. Justice MABRY referred the case to Court Commissioner Hocker, and after his report the court prepared the following opinion.)

PER CURIAM        (*After stating the facts.*)

No question is presented on the record before the court as to any of the pleadings in the case.

The first count of the declaration declares upon a contract, the terms of which are stated, and it is alleged to be in writing, but the contract is not made a part of the count.

The second count declares upon a completed contract made the twentieth day of December, 1891, the terms of

which are stated, and it is alleged that defendant then promised to sign a written obligation containing the terms of the agreement whenever plaintiffs would have the same prepared, and that they did thereafter prepare it and defendant signed it, a copy being attached as a part of the declaration. This second count we construe to be upon a completed verbal contract, made on the twentieth day of December, 1891, the terms of which were then assented to by both parties. If the terms of the contract were mutually agreed upon and the parties came to a definite conclusion in reference to the same, the fact that it was further agreed that the terms of the agreement should be put in writing and signed will not affect the contract made, though it was never reduced to writing and signed. Bell v. Offutt, 10 Bush (Ky.) 632; 7 Am. & Eng. Ency. Law (2nd. ed.) 140 and cases cited.

The contract alleged in the declaration was a mutually binding completed contract containing mutual promises on the part of both parties in reference to matters about which they could verbally contract 1 Parsons on Contracts (8th ed.) * 448.

The first assignment of error is based upon the ruling of the court admitting in evidence over the objection of defendant, the paper writing made a part of the second count of the declaration. One objection to it is that it is void for want of mutuality, not being signed by plaintiffs. The writing could not properly be admitted under the first count of the declaration as a contract between the parties as it purports to be a mutual obligation and it is not signed by plaintiffs, and therefore not binding on them. If introduced under the second count for the purpose of proving the contract alleged to have been made in December, 1891, it should have been excluded as it could not

as independent evidence prove such contract. The plaintiffs, however, alleged a contract in December, and that defendant then promised to sign a written agreement containing its terms whenever plaintiffs would have the same prepared, and upon proof of the verbal contract it would be proper to admit the writing in proof of the allegation made, and as affording evidence of the terms of the actual agreement. At the time plaintiffs offered the writing in evidence there was no testimony as to the verbal agreement made in December, and the court should not have admitted it. It appears, however, that plaintiffs subsequently introduced testimony tending to prove such contract and the objection was thereby obviated.

It is further contended by the plaintiff in error that even conceding that the contract is binding upon the parties to it, that yet it is so indefinite in its terms as to be incapable of enforcement. The contention is that it is indefinite in its failure to specify the size of the logs to be delivered and squared, and that consequently it is impossible to ascertain definitely how much the plaintiffs would have been titled to receive for the work of squaring them, since they were to be paid for that work at the rate of two cents per cubic foot. This contention we think is untenable. The contract, the terms of which are shown by the written memorandum, provided for the delivery by the defendant of three thousand "saw logs," and to pay to the plaintiffs two cents per cubic foot for "squaring said logs," and the plaintiffs thereby agreed to "square 3000 pine saw logs" at the rate of two cents per cubic foot. The term "saw logs" seems by the evidence adduced to have a well understood meaning among those habitually dealing in that commodity, and "saw logs," designed, as pro-

vided by this contract, to be converted into *"squared"* timbers, seems also by the evidence to be understood among lumber dealers as calling for a log that will square out at least eighteen cubic feet to the log, though upon this latter point there was conflict in the evidence, some of the witnesses contending that a saw log designed for squared timber to be merchantable must contain at least twenty-five cubic feet. The rule in such cases is that where words or phrases used in a contract have acquired a definite meaning generally or by local usage, or when used in reference to certain things, or commodities, have acquired a definite meaning among those dealing with such things or commodities, and the language used in the writing is such that the court does not understand it, oral testimony is admissible to explain the meaning of such words or phrases. 2 Jones on Evidence, Sec. 461; 1 Greenleaf on Evidence, Sec. 280; Gorrisen v. Perrin, 2 C. B. Rep. N. S., (89 E. C. L.) 681; Soutier v. Kellerman, 18 Mo. 509; Long v. Davidson, 101 N. C. 170, 7 S. E. Rep. 758; Walls v. Bailey, 49 N. Y. 464, S. C. 10 Am. Rep. 407; Ganson v. Madigan, 15 Wis. 144, S. C. 82 Am. Dec. 659. Under this rule the court below committed no error in admitting parol testimony in explanation of the meaning of the quoted words and phrases used in the contract, to the admission of which testimony objections were made and exceptions taken.

One of the pleas sets up the defense that it was expressly agreed by and between the parties at the time of agreeing upon the terms of the contract that before it should become binding or effective it should be reduced to writing and signed by both parties, and that it was never signed by plaintiffs. The copy attached as a part of the declaration and put in evidence shows that it was

signed only by the defendant Hinote.   The record shows
that plaintiffs joined issue upon this plea as   they   did
upon all the others. If it was the express agreement of the
parties at the time of entering into the verbal agreement
that it was not to be binding or effective until reduced to
writing and signed by both parties, then there was no con-
tract until it was so reduced to writing and signed.   The
rule as announced in Mississippi and Dominion Steamship
Company, Limited, v. Swift, 86 Maine 248; 29 Atl. Rep.
1063, is that "if the party sought to be charged intended
to close a contract prior to the formal signing of a writ-
ten draft, or if he signified such an intention to the other
party, he will be bound by the contract actually made,
though the signing of the written draft be omitted.   If
on the other hand such party neither had nor signified
such an intention to close the contract until it was fully
expressed in a written instrument and attested by signa-
tures, then he will not be bound until the signatures   are
affixed.   The expression of the idea may be attempted in
other words:   if the written draft is viewed by the parties
merely as a convenient memorial, or record of their pre-
vious contract, its absence does not   affect the   binding
force of the contract; if, however, it is viewed as the con-
summation of the negotiation, there is no contract until
the written contract is finally signed."   Morrill v. Tehama
Consolidated M. & M. Co., 10 Nev. 125; 7 Am. & Ency. of
Law (2nd. ed.) 140.   The plea clearly   sets up the   de-
fense that the parties agreed that the contract relied on
should not be binding or effective until reduced to writ-
ing and signed by both parties and the   joinder   thereon
presented this issue to be passed upon by the jury. One of
the plaintiffs testified that the contract was made in De-
cember, 1891, but was subsequently reduced to writing on

January 11th, 1892; that several hundred logs had already been delivered at their mill before any contract was made and defendant continued to deliver logs until sometime in April, 1892, when he ceased to deliver any more. Defendant introduced evidence tending to sustain fully the plea that it was agreed expressly that the contract was not to be binding or effective until reduced to writing and signed by both parties, and that defendant did not know plaintiffs had not signed the agreement until after he had furnished the logs delivered.

The court instructed the jury, in effect, that if it was the agreement between plaintiffs and defendant that the contract entered into and reduced to writing was to be signed by both parties and recorded, and the evidence showed that plaintiffs failed to sign the same and that it was not recorded, and that defendant knowing the fact entered upon the execution of his part of the contract after he signed it, he waived such conditions and could not avoid the contract on that ground.

The defendant asked the court to instruct the jury that if they believed from the evidence that at the time of making the original verbal contract it was the intention of the parties that it should not be binding unless reduced to writing and signed by the parties, and that the written contract was never signed by plaintiffs, they should find for defendant. The court refused to give the instruction as requested, but modified it by adding the qualification that unless the signing by plaintiffs was waived by defendant entering upon the performance of the contract after he had signed it, and knowing it was not signed by plaintiffs. The instruction given by the court and the modification of the one requested by defendant was duly excepted to and assigned as error. They exhibit the view

on this branch of the case that was presented by the court to the jury, and we think it was erroneous, and on the evidence produced may have misled them to the prejudice of the defndant. The established rule in this State is that the instructions of the court to the jury must be confined to the issues made by the pleadings. No recovery can be had upon a cause of action however meritorious, or however satisfactorily proven that is in substance variant from that which is pleaded by plaintiff. Parrish v. Pensacola & A. R. Co., 28 Fla. 251, 9 South. Rep. 696; Jacksonville, T & K. W. Ry. Co. v. Neff, 28 Fla. 373, 9 South. Rep. 653, and authorities therein cited. In Hooker v. Johnson, 10 Fla. 198, it was held that when in an action of covenant the plaintiff avers full performance on his part and that is the issue to be tried, it was improper for the judge so to instruct the jury as to raise the question of excuse for non-performance by him. In that case the court further held that while it was error to give the charge, it satisfactorily appeared from the evidence that the jury were not misled by it. On the state of the evidence in the present case we are unable to affirm that the jury were not misled as to the issue to be tried by the charges given. The issue raised on the plea was whether it was agreed by the parties that their agreement should be reduced to writing and signed by both parties before there was any binding contract between them and the court in effect instructed the jury that they might still find for the plaintiffs, if they believed from the evidence that defendant waived the signing on the part of plaintiffs. a question not presented by the pleadings. For this error the judgment must be reversed, and it is so ordered.