STRONG & TROWBRIDGE COMPANY, A CORPORATION UNDER THE LAWS OF NEW JERSEY, *Plaintiff in Error,* v. H. BAARS & COMPANY, A CORPORATION UNDER THE LAWS OF DELAWARE, *Defendant in Error.*

1. In order to create a contract it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing in the same sense.

2. The acceptance of an offer, to result in a contract, must be absolute and unconditional; identical with the terms of the offer, and in the mode, at the place, and within the time expressly or impliedly required by the offer.

3. Where the person sought to be bound never had an intention to close a contract until it was fully expressed in a written contract covering all conditions named and so notified the other parties, he will not be bound until such a contract be signed by the parties.

This case was decided by Division B.

Writ of error to the Circuit Court for Escambia County.

STATEMENT.

The plaintiff in error as plaintiff below brought a suit in the circuit court of Escambia county for damages for the alleged breach of two contracts for the sale of certain lumber. A large number of questions are presented, but they are all subsidiary to the main question whether the evidence which is all in the form of telegrams and letters establishes the contracts upon which the two counts of the declaration are based.

The first amended count of the declaration is as follows: "For that, before the bringing of this suit the defendant, in consideration of the promise by the plaintiff to pay to it the prices hereinafter mentioned, promised and agreed to and with the plaintiff, that it, the defendant, would sell and deliver to the plaintiff at and for the price of thirteen and 50/100 ($13.50) dollars per thousand feet, board measure, free on board steamer at Pensacola, Florida, or Gulfport, Mississippi, to suit arrival and charter of steamer during January, February, 1906, a cargo of from seventeen hundred thousand (1,700,000) to twenty five hundred thousand (2,500,000) superficial feet at the option of the plaintiff, of pitch pine lumber according to schedules and specifications furnished by the plaintiff to defendant, and of standard grade according to Gulf Coast Classification, except a portion of said cargo consisting of 1 x 3 inches and 1 x 6 inches lumber which the defendant had by said contract the option to supply either standard grade or kiln dried saps, the said lumber to be shipped on a steamer chartered under defendant's form of charter party known as the 'Pix Pinus' or on defendant's form, of charter party, known as '$2.00 form,' but two-thirds rate to plaintiff's benefit. That after making the said contract the plaintiff did and performed all things to be done and performed by it, but that before the first day of

January, 1906, to-wit: December 22nd, and December 23rd, 1905, the defendant announced and declared to the plaintiff, that it would not furnish the said cargo and has ever since declined, refused and failed to furnish the same, although the plaintiff has demanded that it should so furnish it; that defendant was at and before the making of said contract informed by the plaintiff that the said cargo was to be sold for and shipped to South American markets, and that prior to the said announcement and refusal of the defendant, the plaintiff had sold the said cargo for shipment to South America, and had chartered a vessel for its transportation to South America, and that by the refusal of the said defendant and its failure to furnish the said cargo, the plaintiff has lost great gains and profits which it would otherwise have made, to-wit: gains and profits exceeding the sum of thirty thousand dollars ($30,000.00). Letters and telegrams written and sent and received by the plaintiff and defendant respectively constituting the said contract, are hereto attached and made a part hereof."

The second count is as follows: "For that, before the bringing of this suit the defendant, in consideration of the promise of the plaintiff to pay to it the prices hereinafter mentioned, promised and agreed to and with the plaintiff, that it, the defendant, would sell and deliver to the plaintiff at and for the price of thirteen and 50/100 dollars ($13.50) per thousand superficial feet, board measure, a steamer's cargo of pitch pine sawn lumber of not exceeding nine hundred (900) standards, according to specifications furnished by plaintiff to defendant, except that defendant should not be bound to proportionate sizes specified in such specifications, such lumber to be furnished free on board the steamer addressed to the defendant and placed into defendant's hands and chartered by the plaintiff, upon charter known as full Pix Pinus form,

all the perquisites under such charter to belong to the defendant, the defendant returning to the plaintiff one and 50/100 dollars ($1.50) per thousand feet of that part of the cargo not supplied by it; provided, that plaintiff should furnish such part as promptly as required, the defendant agreeing to furnish five hundred thousand to six hundred thousand feet to February, 1906, steamer, and the remainder of said nine hundred (900) standards for a shipment beginning not earlier than the end of March, 1906. That after the making of the said contract, the plaintiff did and performed all the things to be done and performed by it, but that before the first of February, 1906, to-wit, on the 16th day of January, 1906, the defendant announced and declared to the plaintiff that it would not furnish said cargo and has ever since declined and refused and failed to furnish same; that the defendant was informed by the plaintiff at and before the making of the contract that the said cargo was to be sold for and shipped to South American markets and that prior to the said announcement, refusal and failure of the defendant, the plaintiff had sold the said cargo for shipment to South America and had chartered a vessel for its transportation to South America; and by the said refusal and failure of the defendant to furnish the said cargo, the plaintiff has lost great gains and profits which it otherwise would have made, to-wit: gains and profits exceeding thirty thousand dollars ($30,000.00). Letter and telegrams written and sent and received by the plaintiff and defendant respectively, constituting the said contract, and hereto attached and made a part hereof. To the damage of the plaintiff of thirty thousand dollars ($30,000.00.) Wherefore it sues."

Such of the telegrams as are essential to the disposition of the case will be referred to in the opinion.

Upon a consideration of this case in its order, this

court rendered an opinion affirming the judgment of the circuit court. The cause coming on now to be heard upon a rehearing, the following opinion is filed in lieu of the former one.

*Blount & Blount & Carter* for Plaintiff in Error.

*John C. Avery* for Defendant in Error.

PARKHILL, J., (*after stating the facts.*)

In order to create a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing in the same sense. 1 Story on Contracts, section 490; Etheredge v. Barkley, 25 Fla., 814, 6 South. Rep., 861.

In the making of a valid contract, the parties must not only be capable of an intelligent assent, but they must actually give their assent; and the assent must be to precisely the same thing, and at the same instant of time. Consequently, if one assents to a certain thing, and the other assents to it only with modifications; or if one assents to it at one time and the other at a different time, no agreement or contract arises therefrom. From this it is clear that an offer must be accepted before it can become a binding promise. While the assent of both parties must be at the same instant of time, it is not necessary that the communication shall be simultaneous.

The acceptance of an offer, to result in a contract, must be: (1) Absolute and unconditional; (2) identical with the terms of the offer; and (3) in the mode, at the place, and within the time expressly or impliedly required by the

17—Vol. 60.

offer. If a person offers to do a definite thing, and the person to whom the offer is made accepts conditionally, or introduces a new term into the acceptance, his answer is not an acceptance; but it is either a mere expression of willingness to that, or it is in effect a counter offer, which must be accepted or assented to before a contract can result. It is also essential that the acceptance shall be made in the manner, at the place, and within the time expressly or impliedly designated in the offer. The proposer has the right to dictate terms in respect to the time, place, and manner of acceptance, and when he does so, like other terms, they must be complied with. Clark's Elementary Law, 164, 165.

On October 5, 1905, the plaintiffs opened negotiations with defendants by sending a telegram as follows: "Telegraph firm offer on three million to four million feet pitch pine for River Plate assortment for shipment by steamer between now and December thirty-first." The letter of October 9th, from the plaintiffs, Strong & Trowbridge Company, to the defendants, shows that Baars & Company could not quote price for pitch pine shipment to December 31st, and so the plaintiffs requested Baars & Company to make lowest F. O. B. price for enclosed specification for January and February shipment.

By two telegrams, October 12th, Baars & Company submitted an offer for January-February shipment, *subject to their form charter party either pix pinus or two dollar form,* and fixing plaintiff's commission at 7 1/2 percent for cash.

Referring to Baars & Company's telegram of October 12th, and of course having reference to the price named, the provision that the shipment must be subject to defendants' form of charter party and the commission mentioned, the plaintiffs by telegram of the 20th day of October, in-

formed defendants that they (plaintiffs) have a business firm in hand seeking steamer can close for certain grade and quantity of lumber. Thereupon Baars & Company by telegram, accept the offer as per plaintiffs' telegram of 20th, which telegram referred to Baars' telegram of 12th that contained the provision for, form charter party, price &c.

But still there was no meeting of the minds of these parties, for on October 20th, the plaintiffs wire Baars & Company: "In order to facilitate our chartering telegraph us what difference you make between the two dollar and pix pinus form." On October 21st, by wire, Baars & Company explain the difference between the two forms of charter. On October 23rd, the plaintiffs send defendants a long letter covering subject matter of their negotiations by wire, and make it plain that they (plaintiffs) are dealing for third persons, saying: "If the cargo suits *our clients* on arrival out we shall be able to place regular business with you in the future." Up to this time there was no meeting of the minds of the parties. They were still negotiating, for on the 27th of October, the plaintiffs wire Baars & Company: "Referring your telegram twelfth we notice reference your form of charter party do not understand reference thereto. Mail us copy immediately." On the same day Baars & Company mailed copies of the two forms of charter party to the plaintiffs and so notified them by wire. Then follows more correspondence about the matter, when the cargo could be ready for shipment and when a boat would be chartered. Baars & Company acknowledge receipt of revised specifications in order, and contracts forwarded by plaintiffs, which contracts were in order with exception of some small items, and promise to return the contracts signed with a memo of these differences. This matter was still incomplete. On November 11th the plaintiffs wire: "Expect to close

Monday." Monday passed, and after waiting until December 4th, the plaintiffs ask defendants to name a port to load steamer "to enable us to fix charter immediately." And on the next day, as late as December 5th, the plaintiffs make it clear that this matter had not been closed up so far as they were concerned, for they wire Baars & Company: "We understand in the event of closing a charter on the two dollar form you will rebate us two dollars per thousand. Kindly confirm." And they express the hope to "close charter tomorrow." On the 6th of December Baars & Company answer: "We certainly cannot rebate as the perquisites of charter belong to us the sale was made upon that basis. We refer you also to our telegram of October twenty-sixth." Baars & Company's telegram of October 26th, read: "Of course you understand perquisite charter or benefit as per our telegram of twelfth," referring to the first telegram from Baars & Company on the subject where they distinctly make their offer of pitch pine subject to their form of charter party.

Thus the plaintiffs introduce a new or counter proposition into the acceptance. If anything seems to have been certain in these negotiations up to this time, it was that the offer of the defendants to furnish the shipment of pitch pine was subject to their form of charter party, either pix pinus or two dollar form, *perquisites to belong to the defendants,* and the plaintiffs were to receive a commission of 7 1/2 percent for cash. But now after all this time, the plaintiffs say *in the event* of closing a charter on the two dollar form they understand defendants will rebate plaintiffs two dollars per thousand, and ask for confirmation. The defendants do not confirm this understanding.

On December 8th, the plaintiffs telegraph: "Referring your telegram sixth we bought f. o. b. vessel cannot understand position you take. Rate of freight and correspond-

ing clauses in charter party are for charterers account."
The defendant replied, "We sold cargo subject our form
charter party perquisited to us."

On December 18th, plaintiffs wire: "We have closed
steamer 'Marken'   *   *   *   ready Feb. first to twen-
tieth." The next day defendants acknowledge receipt of
telegram about "Marken" and inform plaintiff that "on
account of delay caused by controversy about charter and
contract not being in order yet, we cannot consent to ship-
ment now until end of March earliest, subject immediate
regular contract with all conditions claimed by us." The
plaintiffs failed to meet this proposition and make the
claim for damages as set out in the first count of the dec-
laration.

Whether the plaintiffs were acting for themselves, or
for third persons, as seems likely, we are clearly of the
opinion that there never was a meeting of the minds of
the parties finally in this negotiation, and that the plain-
tiffs themselves, after apparently accepting the terms of
the offer made by the defendants, deliberately introduced
a new demand entirely different from the proposition
made by the defendants and caused a failure of the nego-
tiations. The plaintiffs have no cause of action as claimed
in the first count.

The claim for damages covered by the second count of
the declaration depends upon the offer made by the defend-
ants in their letter of December 28th and telegram of De-
cember 30th, the acceptance by the plaintiffs on January
2nd, 1906, and confirmation by defendants on January
3rd, and their refusal to furnish the lumber.

The offer of December 28th, by the defendants was spec-
ially made "subject to immediate acceptance and regular
contract covering all conditions named by us."

Although defendants' offer of December 28th, was made
subject to immediate acceptance and regular contract

covering all conditions named, yet plaintiffs never have entered into or tendered the said contract to defendants. And so, after waiting nineteen days for the contract, the defendants notified plaintiffs on the 16th day of January, "being still without the contract and addressed copy of charter party per SS 'Marken' stipulated for in our offer of the 28th of December    *    *    *    we now beg to inform you that we consider ourselves free from all obligations to furnish you with the South American lumber referred to."

We think the defendants were justified in this action. It is clear that the defendants never had an intention to close the contract until it was fully expressed in a written contract covering all conditions named and so notified the plaintiffs at the time the offer was made and the defendants will not be bound until such a contract be signed by the parties. Hinote v. Brigman & Crutchfield, 44 Fla., 589, 33 South. Rep., 303.

In view of the conduct of the plaintiffs in the earlier negotiations, it would seem that the defendants were wise to stipulate for a written contract before they should be liable on their offer, especially so if the plaintiffs were only acting for some unknown third persons.

The plaintiffs have no cause of action as claimed in the second count, and the evidence not justifying a recovery, the judgment of the circuit court is affirmed.

TAYLOR and HOCKER, J. J., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, J. J., concur in the opinion.