MARTHA W. SMITH, by Conservator, *vs.* GEORGE A. TILTON.

Somerset.   Opinion August 24, 1917.

*Rule as to giving requested instructions upon matters not made an issue by pleadings.*
*Issues raised by pleadings.   General rule as to what issues instructions*
*to juries should cover.   Rule as to court refusing to become parties*
*to contracts violating morality or law of public policy.*
*Rule where the rights of third parties are involved.*

On exceptions to refusal of the presiding Justice to give certain instructions in the charge to the jury.

*Held:*

1.  Instructions to the jury should be confined to the issues made by the pleadings.

2.  The requested instruction did not relate to any issue made by the pleadings.

Action of assumpsit to recover of defendant the sum of six hundred dollars paid by plaintiff to defendant. Plaintiff filed bill of specifica-

tions, in which she alleged certain fraudulent representations upon which she based the right to recover the money so paid to defendant. Defendant filed plea of general issue, and also a brief statement "That the plaintiff, Martha W. Smith, in order to obtain a home which she preferred, gave the six hundred dollars mentioned in her writ and declaration, to her son Harry P. Smith, to enable him to purchase a farm of the defendant, upon which the plaintiff, aforesaid, then desired and expected to live with her said son. The same was received by the defendant as a part of the consideration for said farm which he, the same day, conveyed to the said Harry P. Smith, all being done in the presence of said plaintiff." Verdict for plaintiff in the sum of $605.40. Defendant filed exceptions to refusal of court to give certain requested instructions. Exceptions overruled.

Case stated in opinion.

*Butler & Butler*, for plaintiff.

*Walton & Walton*, for defendant.

SITTING: KING, BIRD, HALEY, HANSON, PHILBROOK, JJ.

PHILBROOK, J.    Action for money had and received.

The plaintiff is the widow of Prescott A. Smith, who died testate. By the terms of his will all his personal property was bequeathed to his widow, "the same to be hers absolutely," as the will states. She was also devisee of a life estate in all his real property, with the power to sell and dispose of the same, or any part thereof, if necessary for her comfortable support and maintenance. After her decease, if there had been no disposal as above provided for, the use, income and occupation of the home farm were devised to the only child of the testator, Harry P. Smith, for the term of his natural life. At the decease of the latter the home farm was bequeathed to the person or persons who would be the nearest relatives of the testator, according to the laws of descent, other than any and all issue of the son Harry and his wife Grace Butler Smith, which issue was expressly excluded as beneficiaries under the will.

When the conditions of the instrument became known, the son was naturally disappointed as to the provisions made for himself and his disinherited children, and made threats to contest the father's testament. It is obvious from the record that the plaintiff, with a maternal love of son and grandchildren which is quite natural,

sympathized with Harry in his disappointment. The matter became the subject of domestic discussion and members of the legal profession were consulted with a view to ascertaining whether the terms of the will, so far as they affected Harry and his children, could be avoided. The plaintiff stated in her testimony that she got her son and this identical defendant to consult attorneys and find out if it could be done, saying also that if it could be she so desired for the children's sake and to please Harry. The necessity of selling the real estate was clouded by the fact that the personal property bequeathed to the plaintiff amounted to about twenty-four hundred dollars, which sum included about eighteen hundred dollars deposited in a local bank, and also by the further fact that exclusive of this bequest the plaintiff, at the time of her husband's decease, had about four hundred dollars of her own money on deposit in a bank.

The defendant owned a farm which Harry desired to purchase. There was talk among the interested parties to the effect that if the widow could give a good title to the home farm then the defendant would convey his farm to Harry and receive in part payment thereof the deed of the home farm from the plaintiff. Hence the question of necessity of sale of the home farm by the plaintiff became the stumbling block which must be removed from the pathway leading to the power to give good title to that farm by the plaintiff. She says that she told the defendant and her son to ascertain, by consulting a certain attorney in whom she professed to have confidence, whether and how these transactions could be carried out successfully. Finally, she says, that defendant told her they had seen this attorney and had been advised by him that she would not be obliged to reach her last dollar before she could sell the home place and that if most of the money was put out of sight it would enable the trade to be accomplished and carried through more quickly. She says that she relied upon this advice and the statement of the defendant that it had been given and paid the defendant six hundred dollars, "to get it out of sight, so that trade could be completed quicker; so I would be able to sell the home place."

She now says that she was deceived and defrauded by the defendant, that the alleged advice reported to her from her attorney was in fact never given, and seeks to recover the six hundred dollars which she paid him.

The defendant denies the deceit and fraud and alleges as further matter of defense that the plaintiff gave the six hundred dollars to her son to enable him to purchase the defendant's farm, and that the same was received by him as a part of the consideration for said farm which he, the same day conveyed to the son, all being done in the presence of the plaintiff.

It does not appear from the record that plaintiff ever executed a deed of the home farm to the defendant, her sole effort being to recover the money paid to the defendant under the claim already described.

The defendant requested the following instruction: "That if the defendant falsely represented to the plaintiff that Mr. M., her attorney, said it would be legal for her to do so, yet if she thereupon placed the $600 sued for in this action, in the hands of the defendant with intent to get it out of sight and for the purpose of giving the false impression that it was necessary for her to sell the real estate of her deceased husband, thereby depriving others of their rights, and preparatory to so doing, then she cannot recover the same back from the defendant." The presiding Justice declined to give this instruction and allowed exceptions. The case is before us upon these exceptions and upon no other ground. The requested instruction was evidently based upon the familiar principle that if a person commits a fraud he cannot ask the law to help him get back his money which he fraudulently paid away. But we have carefully examined the declaration and brief statement, as well as the plea and special matter of defense, and do not find that fraud on the part of the plaintiff was made an issue by the pleadings. As we have already stated, the plaintiff's declaration raises the issue of fraud on the part of the defendant. The defendant denies this allegation and raises a further and substantive issue, namely, that the plaintiff gave the six hundred dollars to her son to enable him to purchase a farm of the defendant and that the same was received by the defendant as a part of the consideration of said farm. The defendant was evidently content to rest his defense upon these pleadings but plainly they did not raise the issue of fraud, or fraudulent conduct on the part of the plaintiff.

In many jurisdictions the law seems to be well settled that instructions should be confined to the issues made by the pleadings. We borrow the language from some of the leading cases.

Instructions of the court should confine the attention of the jury to the issues made by the pleadings. *Holt* v. *Pearson*, 41 Pac. Rep., 560, citing as authority *Torry* v. *Shively*, 64 Ind., 106; *Conlin* v. *Railroad* Co., 36 Cal., 404; *Frederick* v. *Kinzer*, 17 Neb., 366; *Glass* v. *Gelvin*, 80 Mo., 297. Instructions to juries should be confined to the issues made by the pleadings. *Jacksonville Electric Co.* v. *Batchis*, 44 So. Rep., 933, citing as authority *Walker* v. *Perry*, 51 Fla., 344; *Hinote* v. *Brigman, etc.*, 44 Fla., 589. It is an established principle of law that the instructions to a jury must be based upon and applicable to the pleadings. *Kirby* v. *Rainer-Grand Hotel Co.*, 69 Pac., Rep., 378. We think this principle is sound, workable, and in the interest of justice in the trial of causes, and so we hold that the refusal to give the requested instructions, it not being pertinent to any issue raised by the pleadings in the case at bar, was entirely proper.

We do not overlook the contention of the defendant that courts owe it to public justice, and to their own integrity, to refuse to become parties to contracts essentially violating morality, or public policy, even if objection be not made by the parties interested. But this principle, in our minds, does not apply here. Rights of third parties, namely, the collateral heirs of the testator, were involved. The recovery of this money by the plaintiff may enable her to live without the necessity of sale of the real estate which, if not sold, will descend by the will to those collateral heirs. The defendant should not be allowed to keep this money if so doing would fraudulently deprive those heirs of what would rightfully be theirs. We think this is not a case where courts are required to interfere of their own volition in the interests of public policy or the integrity of judicial tribunals.

*Exceptions overruled.*