Suit by Esther B. Roth against Harry C. Dwiggins, and others, to have contract of sale of realty be decreed to be invalid, and for possession of realty, wherein named defendant counterclaimed. From an adverse decree, defendants appeal.
Affirmed.
It appears by the record in this controversy that Esther B. Roth, on June 12, 1939, acquired title by warranty deed to a certain described piece of improved real estate situated in the City of Lakeland and remained in the undisputed possession thereof until sometime in July, 1944. Mrs. Roth lived in Tampa and Mr. R.M. Marler was a real estate broker with his principal place of business at Lakeland, Florida, and Mrs. Nancy Viola Marler worked in the office in the capacity of a sales agent. Mrs. Roth, in 1939 or 1940, listed the property for sale with the Marlers for the sum of $6,000.00, but the property failed to move or a purchaser was not found.
On April 12, 1944, Mrs. Marler wrote the following letter to Mrs. Roth at Tampa, Florida:
"Mrs. E. Roth, April 12, 1944. 106-W 26th Ave., Tampa, Fla.
Dear Mrs. Roth: — Will you please advise me the price on your home here, on S. Blvd. I have a party interested in buying a home in the S.E. Section. If you will advise me your price, both for cash terms, I will show it, and also advise if I may show same inside.
We only charge 5% brokerage. You may quote a price to include brokerage or net to you.
Thanking you in advance for immediate reply, I am,
Yours very sincerely,
Mrs. R.M. Marler.
P.S. — If I find my party wants to pay cash, please quote your best cash price, for quick sale, as I do know he has another place in mind."
On April 14, 1944, Mrs. Marler telephoned long distance from Lakeland to the plaintiff in Tampa to inquire whether the plaintiff had received and answered Mrs. Marler's letter of April 12, 1944. During this telephone conversation the plaintiff told Mrs. Marler that she would have to have time to think the matter over and that she would write Mrs. Marler in due course. On April 15, 1944, Mrs. Roth wrote the following letter to Mrs. Marler:
"Dear Mrs. Marler: April 15, 1944
The price of my house is as follows:
Price ................................ $7500
Mortgage ............................. 3000

Which could be paid off all cash above mortgage. Yes; you can go see however if you will be hindered by tennant please let me know — also tenants will vacate last week in July.
If buyer wants to retain mortgage, monthly payments are at present $35.00. *Page 703 
Will not dicker on price, I know what my house is build of, No hurry to sell.
Thanks for remembering me.
Sincerely yours.
Mrs. Esther Roth."
Mrs. Roth, in 1940, listed the property for sale with Mr. Marler at Lakeland for the sum of $6,000.00, and Mrs. Marler testified that she was instructed to accept a deposit as a binder and to make the sale and make out all necessary papers on the sale but Mrs. Roth would sign the deed. Mrs. Marler called Mrs. Roth over the phone and told her she had sold the place. She was instructed to go ahead with the sale. "I told her I had sold it and had $1,000 deposit" and Mrs. Roth said "All right". On April 17, 1944, Mrs. Marler wired Mrs. Roth viz;
"Mrs. Esther Roth, April 17, 1944 106 West 26th Ave. Tampa, Fla.
In accordance with your letter just received, I have sold your house and accepted a deposit of one thousand dollars to apply on purchase price of Seven Thousand, Five Hundred dollars, Abstract up to date showing marketable title to be furnished buyer. Send or bring Abstract.
Mrs. R.M. Marler."
and on April 19th Mrs. Roth wrote Mrs. Marler viz:
"Dear Mrs. Marler:
owing to unforseen circumstances I am now leaving for the north and cant tell when I'll be back. therefore I suggest that you return the deposit to prospect at once. will contact you again when Ill get back.
Sincerely yours Esther Roth."
On April 17th, 1944, Mrs. R.M. Marler executed, as agent for Mrs. Esther Roth, a contract of sale and pertinent portions thereof are viz:
"The seller hereby acknowledges the receipt from said purchaser of the sum of One Thousand And No/100 ____ Dollars as part of said price. On the approval of said title and delivery of said land said purchaser shall pay the balance of Mrs. Roth's equity over and above the balance due on the aforesaid mortgage, in cash.
It is understood that the present tenants will vacate the last week in July and that possession will be delivered by the seller to the purchaser on or before August 1, 1944.
Witness our hands and seals this 17th day of April, A.D. 1944.
 Mrs. Esther Roth (Seal) 
Signed, sealed and delivered By Mrs. R.M. Marler (Seal) 
in the presence of: Her duly authorized agent
 L.D. Oxford R.M. Marler (Seal) 
Broker
 H.E. Oxford Harry C. Dwiggins (Seal)"
The above contract of sale was acknowledged before a Notary and executed in the presence of two witnesses and recorded among the records of Polk County, and Dwiggins went into possession of the property under the contract of purchase. Mrs. Esther Roth filed a suit in equity under the provisions of Chapter 87, F.S.A., and set up that Mrs. R.M. Marler was without lawful authority to execute in her name the contract of purchase and prayed for an order decreeing the invalidity of the contract of sale signed by Mrs. R.M. Marler as the authorized agent of Mrs. Esther Roth and that Harry C. Dwiggins be required to surrender possession of the property to Mrs. Esther Roth.
Answers were filed and the testimony of the parties and witnesses taken on the issues made by the pleadings when the Chancellor below entered a final decree adjudging the equities of the cause to be with the plaintiff below and granted the prayer of the petition. The realtor's commission, if any, on the sale or the finding of a purchaser for the property was not an issue in the controversy. The defendants below appealed and contend, for several reasons, that the decree entered below was erroneous.
The controlling question presented is whether or not Mrs. R.M. Marler had or possessed the authority from Mrs. Roth to sign her name to the contract of purchase sought to be cancelled or annulled in this suit. The Chancellor below held that such authority did not exist and it is difficult to appreciate, after a careful study or analysis of all the testimony, how any other conclusion could have been reached. The mere listing of real property for sale by *Page 704 
the owner with a real estate agent does not confer or grant the authority to enter into a written contract of sale as the evidence discloses in the case at bar.
In the case of Rhode v. Gallat, 70 Fla. 536, 70 So. 471, 473, we held:
"A real estate agent or broker in whose hands an owner places lands for sale, or who is employed to sell lands, does not thereby acquire authority to bind his principal by signing an agreement of sale of such lands. The inference that such real estate agent or broker has been endowed by his principal with authority to bind him in a written agreement of sale cannot be drawn from circumstances entirely consistent with his employment as a mere agent and broker, nor without other circumstances clearly indicating the grant of such greater authority."
This Court in the case of Smith v. Shackleford, 92 Fla. 731,110 So. 358, reaffirmed the rule enunciated in Rhode v. Gallat, supra, and pointed out the distinction between an employment as a broker to find or secure a purchaser and an employment to effect a sale. This question usually arises between the principal and his agent when considering the circumstances under which a real estate broker was entitled to compensation from his principal. We in part said [92 Fla. 731, 110 So. 360]:
"* * * But this court has never held that an agent's authority to bind his principal in the sale of land may be inferred solely from his employment as an agent, whether he be employed to `procure a purchaser' or to `effect a sale,' when the circumstances are entirely consistent with his employment as a mere agent or broker, and in the absence of other circumstancesclearly indicating the grant of such greater authority. Such a conclusion would be contrary to the rule announced in Rhode v. Gallat and Holmberg v. Queck [90 Fla. 437, 105 So. 817], supra." (Emphasis supplied.) See Whitson v. Owens, 94 Fla. 1201,115 So. 512.
It is next contended that the bill of complaint in the case at bar (1) fails to set forth a proper case for declaratory judgment under Chapter 87, F.S.A.; (2) does not present a case for preventive justice; (3) it is clear from the bill of complaint that the plaintiff below entertained no doubts as to the legality of her listing of the property with the real estate agent; (4) it is not clear that the plaintiff below sought relief from insecurity with respect to the listing of her property; (5) the unauthorized contract of sale signed by the Marlers and the possession of the property given to Dwiggins are not alleged to be unlawful; (6) the plaintiff was guilty of laches and therefore cannot maintain the suit at bar. Many cases from this and other jurisdictions are cited to sustain the several contentions.
The first answer, in part, to these arguments is that many of them were decided adversely by this Court when presented here, heard and denied on petition for certiorari under Rule 34. The second answer is the several terms, conditions and provisions of Chapter 87, F.S.A., authorizing and sustaining the bill of complaint filed in the Court below. The third answer is found in our decisions construing and interpreting Chapter 87, supra. See Sheldon v. Powell, 99 Fla. 782, 128 So. 258; Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808; Caldwell v. North, 157 Fla. 52, 24 So.2d 806; Fraser v. Cohen, Fla., 31 So.2d 463.
The record discloses that the unauthorized contract of sale was signed by Mrs. R.M. Marler on April 17, 1944, and Mr. Harry C. Dwiggins, during the month of July, 1944, went into possession of the dwelling and real estate of the owner, Mrs. Roth, under this unauthorized contract of sale. It is the appellee's theory that Mr. Dwiggins was unlawfully placed in the possession of the property and a court order was required to evict him. The defendant Dwiggins filed answers and counterclaims to the bill of complaint, which were stricken by the Chancellor on motion of the plaintiff below. It is here contended that the court below erred in striking these pleadings under Schupler v. Eastern Mortgage Co., Fla., 33 So.2d 586. It is not denied that Mr. Dwiggins' right or claim of possession is under the contract of sale which it is contended was unauthorizedly signed by Mrs. Marler. It has not been made to appear by either of the stricken *Page 705 
pleadings that the owner, Mrs. Roth, in writing or orally, ratified, approved or confirmed the unauthorized contract of sale and his possession.
Mrs. Esther Roth, on April 19, 1944, two days after her name was unauthorizedly signed to the contract of sale, as shown by the record, wrote a letter to Mrs. Marler — which was received by Mrs. Marler as shown by her testimony — requesting "that you return the deposit to prospect at one". On cross examination Mrs. Marler admitted that she had nothing in writing from Mrs. Roth authorizing her to sign her name to the contract of sale. There is an abundance of testimony in the record to sustain the findings and conclusions of the Chancellor below. It has not been shown that he applied the improper principles of law to the controversy and therefore the decree appealed from should be affirmed.
Affirmed.
THOMAS, C.J., and ADAMS and HOBSON, JJ., concur.