This appeal is from a final decree in a suit for specific performance of an alleged contract for the sale and purchase of real property. The appellees were plaintiffs below and the appellant was defendant. The final decree was favorable to the appellees, apparently upon the theory that certain telegrams, a letter and a printed form "Articles of Agreement" signed only by the owners of the real estate involved in this suit constituted a contract which should be decreed to be specifically performed by the appellant.
The real question for our determination is whether the telegrams, letter and printed form denominated "Articles of Agreement" constituted an enforceable contract for the purchase and sale of real property.
William P. Koehle before his death visited Florida and was shown the property which appellees contend is the subject matter of the alleged contract. Sometime after returning to his home in the north he sent to B.T. Tiller, a broker, who had said real estate listed with him for sale, the following telegram:
 "Pittsburgh, Penn. Sep. 27 249P B.T. Tiller, 219 Donnelly St. MY
 Price of $35,000, accepted for Moore property The price to include this years crop Mailing check Monday in amount requested in buying [sic] deal
 William P. Koehle"
Mr. Tiller answered by wire on October 1st 1946, as follows:
 "Mt. Dora, Fla., Oct. 1st 46 William P. Koehle 2907 Voelkel Ave. Dormont Apt. #6, Pittsburg, Pa. Telegram offer accepted by Moore. Waiting for binder check. B.T. Tiller." *Page 365 
On September 30, 1946, Mr. Koehle sent a letter to Mr. Tiller in words and figures as follows:
 "Mr. B.T. Tiller, 419 Donnelly St. Mount Dora, Florida.
 Dear Sir:
 Received word from Mr. R. Carles that $35,000 was acceptable for the Moore property and you requested a deposit of $3,500.00 Dollars to hold the property until the deal was closed.
 Immediately wire [sic] you as follows:
 `Price of $35,000.00 Dollars accepted for the Moore property. This price to include this years crop. Am mailing check in the amount requested Monday.'
 I hereby enclosed [sic] my check in the amount of $3,500.00 as requested to hold the property until all matters pertaining to the above transaction are completed.
 One of my partners will be in Florida within the week to work out the details with you in order to close the deal.
 The writer is very sorry to state that he will be unable to come to Florida at this time, but wishes to take this opportunity to thank you for the courtesy shown him while looking for a grove in Florida.
 Yours very truly, Wm. P. Koehle"
Under date of October 4, 1946, a printed form of "Articles of Agreement for Deed" was prepared and signed by Joseph W. Moore and Elizabeth Moore, his wife. This instrument was not acknowledged but the signature thereto were witnessed by B.T. Tiller. The record discloses that this purported contract for deed was handed to a man by the name of Ramsey with the request that he sign it, which he refused to do. Evidently Ramsey acted wisely for the only authority which the record discloses he possessed was that set forth in the letter of September 30, 1946, from Koehle to Tiller which was "to work out the details with youin order to close the deal." (Italics supplied). In strict compliance with his commission he declined to sign but accepted the instrument for delivery to his friend Koehle for his consideration and determination as to whether he would accept or reject this new and materially different contract. It contained, among other provisions, the following: "The West Nursery is reserved to the seller for the reason the stock has [sic]been sold before the property was shown to any prospect." (Italics supplied). This stipulation did not appear in either of the telegrams or the letter written by Koehle to Tiller.
It is the contention of the appellees that the telegram and letter from Koehle to Tiller, the latter's wire to Koehle in reply and the further confirmation by the writing in the form of the "Articles of Agreement" constituted an enforceable contract and that the Chancellor did not err when he decreed specific performance thereof. With this contention we cannot agree.
It is well established in this jurisdiction that a relator who merely has property listed with him for sale is not authorized to enter into a binding contract on behalf of his principal. The latest pronouncement of this court upon the subject will be found in the case of Dwiggins v. Roth, Fla., 37 So.2d 702.
Consequently, Koehle's wire to Tiller and Tiller's reply thereto by telegram, if otherwise sufficient, did not create an enforceable contract for the purchase and sale of real property. However, counsel for appellees earnestly insist that regardless of Tiller's lack of authority to enter into a written contract for the sale of the real estate, Koehle's offer to purchase contained in his telegram and letter was confirmed by the Moores when they signed the "Articles of Agreement" and delivered same to Ramsey for transmission to Koehle. We are not advised by the record when Ramsey delivered said instrument to Koehle, however, such delivery apparently was effectuated prior to October 30, 1946, for upon said date Koehle wrote a letter to one Kennedy in which he disclosed the fact that he had "received it and looked it over." It is clear that Koehle never did execute the instrument which had been signed by Mr. and Mrs. Moore.
It could be successfully argued that the various papers might amount to a compliance with Chapter 725.01 Florida Statutes, 1941, F.S.A., if taken together and considered as a whole they should show clearly and convincingly that there was a meeting of the minds of the parties involved as sellers and purchaser. But such is not our conclusion.
Appellant takes the position that the "Articles of Agreement" signed by the Moores was at such variance with the proposal contained in the telegram and letter from Koehle to Tiller as to constitute a new offer which was never accepted by Koehle. Koehle's telegram to Tiller made no reference to any type reservation nor more particularly to a reservation of the West Nursery. The fact that the grove contained the West Nursery may have been one of the determining factors in the mind of Koehle when he decided to purchase the Moore grove.
We hold that the reservation of the West Nursery [whatever that may have meant — it is not clear whether the Moores intended to reserve the land upon which the nursery stock was located and the stock or only the latter] contained in the "Articles of Agreement" constituted a material variance from the offer which was originally made by Koehle to Tiller to purchase the *Page 366 
"Moore property" for $35,000. Indeed, the language employed by the Moores, to-wit: "* * * for the reason the stock has (sic) been sold before the property was shown to any prospect" is not only an express recognition of the novation but it constitutes an attempted explanation thereof.
Moreover, the "Articles of Agreement for Deed" was the only instrument which by any stretch of the imagination could be said to contain a description of the real estate which is definite enough to be used as a guide in locating the property intended to be sold and purchased and it was not executed or, in any manner, accepted by Koehle as it was written. Mayer v. First Nat. Co. of Sarasota, 99 Fla. 173, 125 So. 909. Kingston et al. v. Boone,92 Fla. 560, 109 So. 580; Swisher et al. v. Conrad, 76 Fla. 644, 80 So. 564. Also see note 65 A.L.R. 103. The somewhat complicated detailed description of the property contained in the bill of complaint is very persuasive evidence of the fact that the description in the "Articles of Agreement" was, and was considered, inadequate. In fact the former description does not show any of the property as lying or being in Section 32, Township 19 South, Range 28 East, although the "Articles of Agreement" stated: "located in Section 31 and 32 * * *" The document styled "Articles of Agreement" did not constitute an acceptance or confirmation of Koehle's original proposition and was actually a new and independent offer to Koehle on the part of the Moores. Since this new offer was never accepted by Koehle it cannot be said that a contract was ever entered into between the parties. Webster Lumber Co. v. Lincoln, 94 Fla. 1097,115 So. 498; Strong Trowbridge Co. v. H. Baars Co., 60 Fla. 253, 54 So. 92; Williston on Contracts, (Rev.Ed.), Vol. 1, Sec. 77, p. 222; 12 Am. Jur., p. 543, Sec. 53.
In a case of the character of the present suit wherein the alleged contract is not the customary and usual formal type but is unorthodox the Court should be extremely cautious and should make certain that the instruments which comprise it contain definite, clear, positive terms and conditions which leave no room for speculation or conjecture as to their mutually understood meaning. The description of the property should be sufficiently full to permit no doubt of its extent and location.
It was urged at the time of oral argument by counsel for appellees that Koehle did not refuse to sign the "Articles of Agreement" because of the variance between its provisions and his offer to purchase. He relies upon a letter from Koehle to Tiller bearing date of October 22, 1946, in which the author attempted to withdraw his offer and recapture his $3,500.00 deposit. In this letter Koehle gave as his reason therefor the fact that one of his associates, a Mr. Cox, was seriously ill. The record does not disclose the fact, if it be a fact, that Koehle had seen the "Articles of Agreement" as prepared and signed by the Moores before writing said letter. We are not justified in presuming that such was the case, particularly in view of the fact that a letter from Koehle to Kennedy under date of October 30, 1946, shows that by then Koehle had seen the proposed "Articles of Agreement" and expressly made reference to the proposal to reserve the West Nursery as a new and additional condition of the sale. We find that the premise of counsel's argument is not supported by the record. If it were, it would be persuasive only — not controlling. Unless there was a meeting of the minds of the parties who attempted to enter into the alleged contract, there was no contract. This is true regardless of the reason given by one of the parties for seeking the return of his earnest money. The instant case must turn upon a determination of the question: Was there a meeting of the minds of the alleged contracting parties? We have answered this query in the negative.
The Chancellor erred in decreeing specific performance. He should have entered a final decree dismissing appellee's bill of complaint and cause of action.
Reversed.
ADAMS, C.J., and CHAPMAN and SEBRING, JJ., concur. *Page 367